[No. 45906-0-II.   Division Two.   November 25, 2014.]

*In the Matter of the Welfare of* N.M.

*Lise Ellner*, for appellant.

*Robert W. Ferguson, Attorney General*, and *Eric S. Beckendorf, Assistant*, for respondent.

¶1   WORSWICK, J. — H.M. is the mother of N.M., a child born in 2007.[1] H.M. appeals the juvenile court's order terminating her parental rights as to N.M. She argues that the juvenile court abused its discretion by denying her motion to continue the juvenile termination trial in order to attempt to establish a guardianship. She also argues that the Department of Social and Health Services (Department) failed to meet its burden to prove that (1) all necessary services capable of remedying parental deficiencies were offered or provided, (2) continuation of the parent and child relationship clearly diminished the child's prospects for early integration into a stable and permanent home, and (3) termination of H.M.'s parental rights was in the child's best interests. In the published portion of this

___

[1] N.M.'s father, J.M., died in June 2010.

opinion, we hold that the juvenile court did not abuse its discretion by denying the motion to continue the termination trial. In the unpublished portion of this opinion, we hold that substantial evidence supports all of the juvenile court's findings of fact on the challenged statutory elements required for termination. Accordingly, we affirm.

## FACTS

¶2 In October 2012, H.M. was arrested on an outstanding bench warrant. During her arrest, drugs and a firearm were found in the home. At the time of H.M.'s arrest, N.M. was removed from the home and placed in foster care. After approximately two months in foster care, N.M. was placed in relative care with her paternal grandmother. In December 2012, the juvenile court entered an agreed order of dependency, and also entered a dispositional order requiring H.M. to engage in the following services: obtain a drug and alcohol evaluation and follow all treatment recommendations, obtain a psychological evaluation with a parenting component and follow all recommendations, and submit to random urinalysis (UA) testing.

¶3 Rion Tisino, the assigned social worker, referred H.M. to UA testing. H.M.'s first UA was positive for opiates and morphine. H.M. failed to appear at the remaining UA tests. Ultimately, the service provider terminated the service contract based on H.M.'s failure to participate.

¶4 Tisino also referred H.M. for a drug and alcohol evaluation. The drug and alcohol evaluation recommended intensive outpatient treatment. H.M. did not enter or participate in drug treatment until her subsequent incarceration on a drug conviction.

¶5 Tisino also referred H.M. for a psychological evaluation. H.M. failed to attend several appointments, but she was ultimately able to complete the first portion of the evaluation. The second portion of the evaluation required observation of H.M. and N.M. together. This second portion

was not completed because the Department was unable to confirm an appointment with H.M. and, as a result, could not coordinate transporting N.M. to the evaluation.

¶6 Overall, H.M.'s participation in the dependency was minimal. In June 2013, the Department filed a petition for termination of H.M.'s parental rights. In September 2013, H.M. was sentenced on another drug charge. H.M. received a drug offender sentencing alternative sentence. Her anticipated release date from incarceration is January 2015.

¶7 The termination trial was scheduled for January 22, 2014. On the day of the termination trial, H.M.'s attorney moved to continue the hearing because he had not had a meaningful opportunity to communicate with H.M. He also stated that the continuance was necessary to arrange for H.M. to appear by telephone from prison. The juvenile court granted the motion to continue, and the termination trial was rescheduled for January 28.

¶8 On January 28, H.M. requested a 90-day continuance. H.M.'s attorney explained that he had recently discussed with H.M. the potential for a guardianship with N.M.'s paternal grandmother and that H.M. wanted to pursue guardianship as an alternative to termination. The Department opposed the motion. The Department argued that a guardianship had never been identified as a potential permanency plan for N.M. and that it would be in N.M.'s best interests to move forward with termination. Tisino stated that after H.M. raised the potential for a guardianship, he discussed the option with N.M.'s grandmother and N.M.'s grandmother did not seem interested in a guardianship. He also stated that he had planned on speaking to N.M.'s grandmother about a final decision earlier that morning but that he had not been able to contact her. The juvenile court denied the motion to continue and proceeded with the termination trial.

¶9 At the termination trial, Tisino testified to the above facts. He also testified that N.M.'s grandmother was an adoptive placement and that the Department had com-

pleted an approved adoption home study. He stated that N.M. had been placed with her grandmother for almost the entire dependency and N.M. was thriving in her current environment. He also stated that N.M. could not be adopted unless H.M.'s parental rights were terminated.

¶10 Shelley Knick, N.M.'s court appointed special advocate (CASA), testified that N.M. was doing extremely well in her current placement and that an adoptive permanent placement with her grandmother was in N.M.'s best interests. She stated that she regularly talked to N.M. and that N.M. consistently stated that "she would like to see her mommy more but she's very happy staying with her grandma." 2 Report of Proceedings (RP) at 67. H.M. asked Knick about a guardianship. Knick testified that her understanding was that a guardianship was not as permanent as an adoption because there was still the potential for the parent to regain custody of the child. She noted that this was not in N.M.'s best interests because

[r]ight now, [N.M.] gets confused when her mother makes commitments to her that she's not able to fulfill, and so there have been occasions where they've spoken and she has promised her that she will be with her this summer. They'd be together again, getting her hopes up quite a bit that those options are available to her and that she might be coming home again. And every time that happens, then the child goes through the considerable grief and loss again, for which she's getting counseling when her mom's not able to fulfill that.

Her grandma has been consistent in all of her promises and her ability to keep her promises, and I think that having that permanency would help her to accept her current situation with an openness and really less expectation on her mother to get well and demonstrate whatever she can in [N.M.'s] life without expecting her to some day return to her home and be cared for by her mom.

2 RP at 70.

¶11 H.M. testified that she had not properly dealt with her husband's death.[2] She stated that she was currently in a drug treatment program in prison and that she was engaging in individual therapy to deal with her grief and loss.

¶12 The juvenile court concluded that the Department had met its burden to prove all the statutory elements for termination by clear, cogent, and convincing evidence. Specifically, the juvenile court found that the Department had expressly and understandably offered and provided all services but that H.M. had failed to avail herself of the services while she was in the community. The juvenile court further found that H.M. was currently unfit because she was incarcerated and had not finished drug treatment, and that there was little likelihood that conditions would be remedied in the near future because she was not going to be released from incarceration for at least a year and she had not availed herself of any services when they were offered by the Department.

¶13 As to whether the continuation of the parent and child relationship clearly diminished N.M.'s prospects for early integration into a stable and permanent home, the juvenile court found that the Department had met its burden because there was testimony establishing the child needed permanency and that N.M. could not be adopted until H.M.'s parental rights were terminated. The juvenile court entered an order terminating H.M.'s parental rights to N.M. H.M. appeals.

## ANALYSIS

¶14 H.M. argues that the juvenile court abused its discretion by refusing to grant a continuance to allow H.M. to confirm whether N.M.'s grandmother would be willing to

---

[2] H.M. testified at the termination trial by telephone from prison.

serve as H.M.'s guardian.[3] We disagree. The juvenile court did not abuse its discretion in denying H.M.'s motion for a continuance, and the Department met its burden to prove all of the challenged elements for termination. Accordingly, we affirm the order terminating H.M.'s parental rights to N.M.

## MOTION TO CONTINUE

¶15 H.M. argues that under our recent decision in *In re Welfare of R.H.*, 176 Wn. App. 419, 309 P.3d 620 (2013), the juvenile court erred by denying H.M.'s motion to continue because evidence of a guardianship is material evidence in a termination trial. However, as we explained in *R.H.*, terminations are fact specific and must be decided on a case by case basis. *R.H.*, 176 Wn. App. at 429. Therefore, denying a continuance sought for the purpose of exploring a guardianship is not a per se reversible error. Here, the juvenile court did not abuse its discretion because (1) there was no identified guardian, and therefore there was no identified guardianship, and (2) the juvenile court's decision was reasonable considering the totality of the circumstances.

¶16 It is well established that parents have a fundamental liberty and privacy interest in the care and custody of their children. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). And because of the constitutional rights at stake in a termination proceeding, "due process requires that parents have the ability to present all relevant evidence for the juvenile court to consider prior to terminating a parent's rights." *R.H.*, 176 Wn. App. at 426. In *R.H.*, we held that this due process right applied to motions to continue a termination trial in order for parents to establish an alternative to termination. *R.H.*,

---

[3] We address H.M.'s arguments regarding the sufficiency of the evidence supporting the trial court's order terminating her parental rights in the unpublished portion of this opinion.

176 Wn. App. at 428-29. We held that the trial court abuses its discretion if it violates a parent's substantive due process right to present material evidence by denying the parent's motion to continue. *R.H.*, 176 Wn. App. at 428-29. We did not, however, hold that as a matter of law, it will always be error for the juvenile court to deny a motion to continue that is sought to allow parents time to explore alternatives to termination. Therefore, we must review each case on a fact specific basis to determine if (1) the evidence the parent sought to admit was material and (2) the trial court manifestly abused its discretion by denying the motion to continue. If the trial court abused its discretion, we must determine whether the parent's procedural due process rights were violated because the error was prejudicial.

¶17 We review a decision to deny a continuance for a manifest abuse of discretion. *In re Dependency of V.R.R.*, 134 Wn. App. 573, 580-81, 141 P.3d 85 (2006). Under a manifest abuse of discretion standard, "[t]he trial court's decision will be affirmed unless no reasonable judge would have reached the same conclusion." *In re Marriage of Landry*, 103 Wn.2d 807, 809-10, 699 P.2d 214 (1985). When determining whether to grant a continuance, the juvenile court must consider " 'diligence, due process, the need for an orderly procedure, the possible effect on the trial, and whether prior continuances were granted.' " *R.H.*, 176 Wn. App. at 424-25 (quoting *V.R.R.*, 134 Wn. App. at 581). "Denial of a motion to continue violates due process if the parent can show 'either prejudice by the denial or the result of the trial would likely have been different if the continuance was granted.' " *R.H.*, 176 Wn. App. at 425 (quoting *V.R.R.*, 134 Wn. App. at 581).

¶18 H.M. argues that the juvenile court manifestly abused its discretion because, based on *R.H.*, evidence of a guardianship is material to whether the Department can meet its burden to prove either means of satisfying RCW 13.34.180(1)(f). However, in *R.H.* our holding was clear: "an *identified* guardianship is material . . . ." 176 Wn. App. at

423 (emphasis added). Our decision in *R.H.* does not hold that a trial court's refusal to continue a termination trial to allow a parent to explore the possibility of a guardianship is per se a manifest abuse of discretion. *R.H.* stressed the need for an identified guardianship before the evidence becomes material.

¶19 H.M. argues that there was an identified guardianship because N.M.'s grandmother was an identified permanent placement, N.M. was placed with her grandmother, and the Department had completed an adoption home study. However, N.M.'s grandmother had never agreed to or expressed interest in entering a guardianship rather than an adoption. This is opposite of the situation that existed in *R.H.* In *R.H.*, the children's aunt had come forward and requested to enter into a guardianship for the children. 176 Wn. App. at 423. At the time of trial, the Department had been unable to complete the aunt's home study and establish the placement. *R.H.*, 176 Wn. App. at 423. H.M. asks us to hold that a permanent placement with possible potential to be a guardianship is the same as a potential guardian that has not yet become a stable, potentially permanent placement. We decline to do so. An "identified guardianship" requires, at a minimum, an identified guardian. Because there was not an identified guardianship, H.M. was not denied her due process right to present material evidence. Therefore, we review the additional factors such as diligence and the effect on proceedings to determine whether the trial court manifestly abused its discretion.

¶20 Here, there are issues regarding diligence and a possible effect on proceedings that were not present in *R.H.* In *R.H.*, the father requested a continuance one month before trial because he had successfully identified a guardian for the children but the Department had failed to complete a home study or transition the children into the placement. 176 Wn. App. at 423. Accordingly, the delay in *R.H.* was not a result of the father's failure to diligently pursue a guardianship as an alternative to termination but,

rather, the circumstances surrounding the logistics of the placement. In contrast, here, H.M. had failed to confirm that N.M.'s grandmother was willing to be a guardianship placement despite the fact that N.M. had been placed with her grandmother for most of the dependency. And the juvenile court had previously granted a continuance to allow H.M.'s attorney additional time to prepare the case.

¶21 Even under *R.H.*, the right to present evidence of a guardianship is not absolute. Where the failure to establish the evidence of a guardianship is due to lack of diligence or a failure to take advantage of prior continuances, the juvenile court does not manifestly abuse its discretion by denying the motion to continue. Because the juvenile court did not manifestly abuse its discretion by denying H.M.'s motion to continue, we do not need to reach the issue of prejudice. We hold that the trial court did not abuse its discretion by denying H.M.'s motion to continue the termination trial.

¶22 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA and LEE, JJ., concur.

Reconsideration denied December 11, 2014.