IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Dependency of L.J.F., dob: 03/30/2015, | ) ) ) | No. 77861-7-I |
| A minor child. | ) ) | DIVISION ONE |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | ) ) ) ) | |
| Respondent, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| JENNIFER CHRISTINE JUSTICE, | ) ) | |
| Appellant. | ) | FILED: August 13, 2018 |

SCHINDLER, J. — Jennifer Christine Justice seeks reversal of an order terminating her parental rights to three-and-a-half-year-old L.J.F. Justice claims the court violated her right to due process by denying her motion on the first day of trial to continue the termination trial for the sixth time in order to obtain documentation to verify participation in parenting classes and Narcotics Anonymous meetings. Because the court allowed Justice to present any relevant documents either during or after the trial but she failed to do so, we affirm.

## FACTS

When L.J.F. was born on March 30, 2015, the baby tested positive for drugs. Jennifer Justice admitted she used methamphetamine and heroin on a daily basis during her pregnancy. Justice agreed to place L.J.F. in the care of her parents. The hospital released L.J.F. to Justice's parents when the baby was approximately six weeks old.

At the conclusion of a contested hearing in June 2015, the juvenile court concluded L.J.F. was dependent because there was no parent capable of adequately caring for the child. See RCW 13.34.030(6)(c). The court ordered Justice to (1) obtain a drug and alcohol evaluation and follow any treatment recommendations, (2) participate in weekly urinalysis (UA) with 90 days of "consistently clean" results, (3) obtain a parenting assessment and follow any treatment recommendations, (4) cooperate in establishing paternity, and (5) participate in intensive family preservation services upon reunification. The order authorized "liberal" visitation with the child, supervised by the grandparents.

When L.J.F. was approximately two years old, the Washington State Department of Social and Health Services (Department) filed a petition to terminate parental rights. The court scheduled trial for July 3, 2017.[1]

The court continued the trial date five times. The court continued the trial from July 3 to July 10, 2017 to allow Justice's attorney to file a notice of appearance and an answer to the petition. On July 10, the court continued the trial for approximately seven weeks to allow the mother to obtain new counsel who would have "appropriate time to receive and review discovery." New

---

[1] The court terminated the alleged father's rights by default on May 18, 2017.

counsel filed a notice of appearance the next day on July 11. On August 7, Justice joined in the Department's motion to continue the trial until September 18. On August 28, the court continued the trial until October 30 because of the Department's outstanding requests for additional discovery. On October 30, the court granted the Department's motion to continue the trial to November 6.

At the beginning of the termination trial on November 6, 2017, Justice requested a three-week continuance. The attorney acknowledged it was "late in the game" to seek another continuance but said she had been "unable to meet with my client in any meaningful sort of matter prior to today." Counsel also said Justice had "documents" she wanted the court to consider that were "proof of services that she has completed to remedy parental deficiencies which she believes has not been acknowledged by the Department." Counsel explained there was a no-contact order prohibiting the mother's access to the documents but a hearing was scheduled the following week to request lifting the order to obtain the documents.

The Department did not oppose a recess to allow counsel to consult with the mother but objected to a three-week continuance of the trial. The Department attorney argued the mother "has been indicating to the Department for some time that she was going to submit proof of those documents" but had not done so.

The court-appointed special advocate (CASA) opposed granting the motion to continue the trial for three weeks. The CASA argued that although Justice mentioned documents at the September 17 settlement conference, the

mother did not provide or produce any information about the documents in the seven weeks since the settlement conference.

The court denied the motion to continue the termination trial for three weeks. But the court agreed to consider documents that Justice provided either during or after the trial.

> If there are — at some later date — some documents that the Court should consider to give equitable treatment here to consider the best interest of the child and their adjudication to the mother, then [defense counsel] can bring those to my attention at that point and propose a remedy for how I would consider those. Either considering them on their face or considering them in conjunction with some testimony. We'd find the time to take that testimony and so forth.

Neither Justice nor her attorney requested a recess to confer.

The trial lasted two days. Two social workers, the CASA, Justice's mother, and Justice testified. The court admitted into evidence more than 20 exhibits.

The testimony established Justice did not complete any court-ordered services during the two-and-a-half-year dependency. In 2015, the social worker assigned to the case referred Justice for UA testing and a parenting assessment. Justice met with the provider once in person but did not complete the parenting assessment because "the timing was just off." Justice did not complete any court-ordered UAs. Justice explained that she did not want to start UA testing until she "knew for sure that [she] could consistently make it to all of [the] UAs required."[2] Justice made an appointment for a drug and alcohol evaluation but did not keep the appointment. Justice said she entered a "detox" program a

_____

[2] Justice maintained, however, that someone she lived with for four months gave her periodic random UAs at home.

4

couple of months after L.J.F. was born but left because she "did not like that program or their recommendations." Justice insisted on deciding the timing and type of drug treatment "on her own terms."

In 2017, Justice told the social worker there was no need to participate in UAs because she "had been clean . . . since shortly after [the] birth" of L.J.F. and had "completed a bunch of stuff" on her own. Justice told the social worker she would provide "paperwork that would prove" she had completed services but she never provided any documentation.

Justice's mother testified that Justice visited L.J.F. only sporadically. In the six months before trial, Justice visited L.J.F. no more than five times and did not visit at all in the two months before trial. Justice would play with L.J.F. but she did not participate in daily caretaking.

Justice's mother testified she did not believe that Justice stopped using drugs after L.J.F. was born based on Justice's "entire demeanor," including her "[s]peech impairment," "[v]isual impairment," "speed," and eyes. When Justice was sober, she was "present," "[o]n task," and "[o]n time"—qualities that she no longer exhibited. One of the social workers also testified that Justice's lack of consistency, repetitive speech, and sleepy demeanor caused her to believe that Justice continued to use drugs.

Justice admitted using drugs while she was pregnant but said she had been clean since "the day I was released from the hospital" shortly after L.J.F. was born. But Justice testified that she entered "detox" a month or two after the birth because she was not "fully clean."

Justice stated she understood all the requirements of the disposition order. Justice testified, "I needed to take a drug assessment, a parenting assessment and do ninety days UAs as well as get acknowledgment of paternity of [L.J.F.'s] father." Justice admitted she did not fulfill any of the requirements because she was "going through yet another rough" period in her life. Justice testified that her lack of reliable transportation was a barrier to participating in services and visiting L.J.F. regularly. Justice said she was living in an area without public transportation and although she had a truck, it had been broken for many months before she "lost it" shortly before trial. Justice admitted her parents helped to fix the truck and provided transportation assistance. Justice did not ask the Department for transportation assistance.

When asked specifically about the documents she wanted to present to the court, Justice mentioned "NA[3] slips" and parenting classes as examples of "things that I've done to better my life." Justice testified that she attended about 16 NA meetings with some people from a church she attended for a while and that she completed one in-person and two online parenting classes.

Justice estimated that within three months, she would be ready to begin the process of reuniting with L.J.F. Justice testified that she was currently staying with a friend and did not have permanent housing. Justice said she was currently seeking housing and was in the process of applying for a car loan.

The trial concluded on November 7, 2017. Two weeks later on November 22, the court entered findings of fact and conclusions of law and an order terminating Justice's parental rights to L.J.F.

---

[3] Narcotics Anonymous.

6

The court's unchallenged findings of fact include the following findings:

2.9   During the dependency in this matter, the mother has not completed any of the court-ordered services . . . . But she was told that and aware that (1) the Court ordered her to complete these services and (2) she needed to complete these services in order for the child to be returned to her care.

. . . .

2.20   The mother has not visited the child consistently. Pursuant to the dependency order, visits are liberal and typically occur at the maternal grandparents' home. In the past six months, the mother visited the child only four to five times. Each of these visits lasted about an hour. The most recent visit was scheduled for October 25, 2017, but the mother did not show up for the visit. The mother did go to see the child on the evening of October 29, 2017, but the child was already asleep. The mother had the opportunity and means to visit the child more frequently and regularly, but she did not do so. The mother is incapable of providing proper care for the child for extended periods of time.

2.21   The mother's testimony was not credible on several topics. For example, the mother's testimony that she has been clean and sober since a few days after the child's birth was not credible and was contradicted by other testimony.

2.22   The mother failed to substantially improve her parental deficiencies within 12 months following entry of the dispositional order. The petitioner has shown that all necessary services reasonably capable of correcting the parental deficiencies within the foreseeable future have been clearly offered or provided. This gives rise to a rebuttable presumption that there is little likelihood that conditions will be remedied so that the child can be returned to the mother in the near future. The mother has not overcome this presumption.

2.23   Even if the presumption discussed in the preceding paragraph did not apply, there still is little likelihood that conditions will be remedied so that the child can be returned to the mother in the near future. The mother has made no progress in remedying the parental deficiencies that led to the child's removal.

2.24 Throughout the dependency the mother has demonstrated an unwillingness to participate in and/or successfully complete services offered to correct parental deficiencies. If the mother were to engage or re-engage in services now, she would essentially be starting over. In a best-case scenario—which is unlikely—it would be at least six months of treatment, and an additional six months of consistency, before there would be even consideration of transitioning the child to his mother's care. This is too long for this young child to wait.

Justice did not ask the court to consider any documents during the two-week period after the trial ended and before the court entered the order terminating parental rights.

## ANALYSIS

Justice contends that the juvenile court violated her right to due process by denying the motion on the first day of trial for a continuance. Justice claims she had insufficient time to consult with her lawyer and denial of the motion prevented her from presenting documents. Justice asserts the documents would have provided the court with a "more complete understanding" of her "efforts to cure her parental deficiencies" and "corroborate her claimed sobriety."

"[P]arents have a fundamental liberty and privacy interest in the care and custody of their children." In re Welfare of N.M., 184 Wn. App. 665, 672, 346 P.3d 762 (2014) (citing Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)). Consequently, due process "requires that parents have the ability to present all relevant evidence for the juvenile court to consider prior to terminating a parent's rights." In re Welfare of R.H., 176 Wn. App. 419, 425-26, 309 P.3d 620 (2013). When deciding the motion to continue a

termination trial, the court must consider "diligence, due process, the need for an orderly procedure, the possible effect on the trial, and whether prior continuances were granted." In re Dependency of V.R.R., 134 Wn. App. 573, 581, 141 P.3d 85 (2006). The denial of a motion to continue does not violate constitutional due process rights unless a parent demonstrates either prejudice from the denial or that the result of the trial would have been different if the continuance had been granted. V.R.R., 134 Wn. App. at 581.

An appellate court reviews the trial court's denial of a continuance for a manifest abuse of discretion. V.R.R., 134 Wn. App. at 580. We will affirm the decision " 'unless no reasonable judge would have reached the same conclusion.' " N.M., 184 Wn. App. at 673 (quoting In re Marriage of Landry, 103 Wn.2d 807, 809-10, 699 P.2d 214 (1985)).

The record does not support the claim that denial of the motion to continue deprived Justice of an adequate opportunity to consult with her attorney or forced her to proceed to trial with unprepared counsel. Justice's attorney filed a notice of appearance on July 11, 2017. The trial began on November 6, 2017. The court granted prior continuances, in part, to allow her attorney time to prepare. Justice and her attorney participated in a settlement conference in September. At trial, the Department did not oppose a recess to give the attorney additional time to consult with Justice. But Justice did not request a recess.

The record shows that denying the request to continue the trial for three weeks did not prevent Justice from obtaining and presenting evidence. The court ruled it would consider documents submitted by Justice either during or after the

trial. As noted, the court did not enter its ruling on the petition to terminate parental rights until more than two weeks after the termination trial concluded. Nonetheless, Justice did not submit any documents.

The authority Justice relies on is inapposite. For example, in R.H., the father requested a continuance a month before the scheduled trial date to allow the Department to complete the investigation of a potential guardian for his children as an alternative to termination. R.H., 176 Wn. App. at 422-23. The Department was optimistic about the guardian placement but had not completed a home study. R.H., 176 Wn. App. at 429. The availability of a guardianship is evidence the court should consider when determining whether the State has met its burden of proving continuation of the parent-child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. R.H., 176 Wn. App. at 429. Because the motion to continue was timely, the potential guardian placement had been identified months earlier, and the need for additional time was not a result of the father's lack of diligence in pursuing guardianship, we held the court abused its discretion in denying the motion to continue. R.H., 176 Wn. App. at 429.

This case bears little resemblance to R.H. Justice made the motion for a three-week continuance on the first day of trial. The court denied the motion but did not preclude Justice from presenting documents in support of her position either at trial or during the more than two-week period after the trial. In addition, the record shows a lack of diligence. Justice told the social worker at least seven weeks before the scheduled trial date that she would produce the documents.

We also conclude the documents Justice sought to present were not material.  See N.M., 184 Wn. App. at 673 (we review each case on a fact-specific basis to determine whether the evidence the parent sought to admit was material).  Justice does not challenge any of the findings that address the six termination factors under RCW 13.34.180(1).  The Department removed L.J.F. because of her drug addiction.  There was no evidence of progress toward correcting that deficiency.  Documents showing attendance at some NA meetings and completion of three parenting classes do not address compliance with any of the court-ordered services.  Justice did not obtain a drug and alcohol evaluation, participate in weekly UAs, or obtain a parenting assessment.

Denial of the motion to continue the trial for three weeks was not a manifest abuse of discretion and Justice cannot show either prejudice or that the result of the trial would have been different.

We affirm the order terminating parental rights to L.J.F.

WE CONCUR: