FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 NOV 19 AM 9: 54

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of J.E.J., DOB: 01/30/2018,<br><br>Minor Child,<br><br>STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES,<br><br>Respondent,<br><br>v.<br><br>J.J.J.,<br><br>Appellant. | No. 77950-8-I<br>(Consolidated with No. 77951-6)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br>FILED: November 19, 2018 |

CHUN, J. — J.J.J. appeals an order terminating her parental rights to her child, J.E.J. She contends the juvenile court violated her right to due process of law when it denied her morning-of-trial motion for a continuance to complete a court-ordered psychological evaluation. The court did not abuse its discretion by denying the mother's motion. The mother does not otherwise challenge the court's findings of fact as to the statutory elements required to support a termination order. Accordingly, we affirm.

I.
BACKGROUND

J.J.J. is the mother of J.E.J., a child born in January 2008.[1] Since April 2015, a maternal uncle has primarily cared for the child.

---

[1] In October 2017, the juvenile court terminated by default the alleged father's parental rights with the child. The alleged father is not a party to this appeal.

On May 21, 2015, the Department of Social and Health Services (Department) filed a dependency petition for J.E.J., alleging that the child was abused or neglected. The Department also alleged that there was no parent or guardian adequately capable of caring for the child.[2] The petition recited concerns about the mother's substance abuse and mental health; the mother's history of abandoning the child; the child missing approximately 31 days of school; and the child wandering the streets of Everett alone. The petition noted at least three prior Child Protective Services referrals due to allegations of maltreatment of the child resulting from the mother's substance abuse.

In August 2015, the court entered a dependency order as to J.E.J. and ordered the following services for the mother: a substance abuse evaluation; random urinalyses (UAs); a mental health assessment; and a psychological evaluation with a parenting component. The order required the mother, among other things, to notify the Department "of any obstacles to accessing court ordered services[,]" to maintain monthly contact with the Department social worker, and to maintain safe, stable, and sober housing suitable for the care of the child. The court also ordered that the mother be allowed one supervised visit per week with J.E.J.

At the first dependency review hearing in October 2015, the court determined the mother not in compliance with the dependency order and was not making progress correcting the issues that required the child's placement with

---

[2] On May 22, 2015, the Department filed an amended dependency petition in which it corrected the dates of several events.

2

relatives. At that time, the mother was not visiting the child on a regular basis. Several months later, following a March 2016 permanency planning hearing, the court deemed the mother in partial compliance with the dependency order by passing random UAs and completing a drug and alcohol assessment. However, she had not yet started mental health treatment and continued to use methamphetamines. The court also ruled the mother was making progress correcting her parental deficiencies and had visited the child for five consecutive weeks, including sporadic phone calls with the child.

In July 2016, the Department asked the court to suspend the mother's visitation. The Department's request followed a supervised visit on July 8 in which the mother stated she would "no longer need the services of CPS" and that she would "be taking [her child] home." The visitation specialist ended the mother's visit early, but allowed the mother and child to have a good-bye hug. At that point, the mother started walking away from the visitation supervisor while holding the child. Law enforcement arrived shortly thereafter and, ultimately, allowed the child to leave with the visitation supervisor. The mother "admits that she had a meltdown on July 8" and attributed her conduct to an adjustment of her medication needs. At a hearing on July 16, 2016, the court suspended the mother's visits with the child and ordered the suspension be reviewed at a hearing on August 3, 2016.

On August 3, 2016, the court determined the mother to be in partial compliance with the dependency order but that she had not made progress toward correcting the problems necessitating the child's removal from her care.

Regarding visitation, the court lifted the suspension and ordered the mother have supervised visitation in a Department office once a week and the Department "has discretion to stop the visitation if mother's behavior is inappropriate or emotionally or physically harmful" to the child. The court also ordered the mother to attend an August 15, 2016 psychiatric evaluation and follow all recommendations.

Less than a month later, at a review hearing on August 31, 2016, the court concluded that the mother was not in full compliance with court-ordered services.[3] While noting its concern about the mother not being fully engaged in services, the court ruled the mother's visits with the child to continue as follows: one supervised visit per week; the mother to secure transportation by the evening prior to the visit; and the mother shall call the visitation supervisor on the night prior to the visit.

In October 2016, the Department referred the mother to Dr. Steve Tutty for a psychological evaluation with a parenting component. However, she did not attend this assessment. The court determined at a January 2017 permanency planning hearing, the mother still was not in compliance with the dependency order and had not made any progress toward improvement.

In May 2017, the Department filed a petition to terminate the mother's parental rights to J.E.J. The Department alleged it offered or provided the

---

[3] At that time, the mother had not complied with her drug treatment and had not engaged in treatment since late July 2016; she had not complied with her UAs and had missed three random tests in August 2016; she had not complied with her mental health counseling and did not attend counseling regularly to formulate treatment goals; she did not show up for an August 2016 medication management appointment; and she was neither regularly visiting nor regularly calling the child.

mother "a drug/alcohol evaluation and treatment, random UA testing, a psychological evaluation with a parenting component, a mental health assessment and counseling, medication management, AA/NA sober support group at least three times per week, and casework management." The termination petition alleged that there was little likelihood that the conditions would be remedied so that the child could return to the mother because:

> The mother has significant substance abuse and mental health issues that will require long-term treatment. . . . The mother has failed to participate in random UA testing, a psychological evaluation with a parenting component, a mental health assessment, mental health counseling, medication management, AA/NA sober support groups at least three times per week, or obtain safe and stable housing. The mother has not been visiting her child on a regular basis, and last visited in October 2016, and has not maintained phone contact. Because the mother has failed to have regular visits with her child, she will need to have a new parent-child contract. This will be the fourth parent-child visitation contract required, since August 2016. She has not demonstrated the ability to care for her child. For these reasons, the mother does not understand and is incapable of providing for the child's emotional, physical, mental, and developmental needs. The mother is incapable of safely parenting the child.

The court set the mother's termination fact-finding hearing for November 15, 2017.

The mother achieved sobriety on June 23, 2017. She then reengaged in services, including: obtaining a mental health evaluation, getting a drug and alcohol evaluation, participating in UAs, and regularly contacting her assigned social worker. The mother also began calling the child regularly in July 2017 and resumed supervised visits with the child in October 2017.

On October 4, 2017, the mother requested a new referral for a psychological evaluation with parenting component. The Department contacted several psychologists in the mother's area to determine their availability and how quickly they could produce a report prior to the original termination trial on November 15, 2017. Ultimately, the Department referred the mother to Dr. Benjamin Johnson.

On November 15, 2017, the court continued the fact-finding hearing to December 11, 2017, based on lack of an available trial judge and to allow for the appointment of legal counsel on behalf of the child.

The termination fact-finding hearing commenced on the morning of December 11, 2017. Immediately prior to opening statements, the mother requested a continuance. The mother explained how she had attended three appointments with Dr. Johnson but the parenting evaluation component was scheduled for December 15, 2017. She argued Dr. Johnson's evaluation could be "dispositive one way or the other as to her ability to parent." Both the Department and the child's attorney opposed continuance of the trial. In its opposition, the Department reminded the court that the mother was offered a psychological evaluation with a parenting component in the fall of 2016 but she failed to attend that assessment.

The court denied the mother's request for continuance and explained that it did not "find good cause for continuance based on the mother's dereliction of getting the evaluation done." The Department and the mother then delivered their opening statements.

During the two-day December 2017 fact-finding hearing, the court heard testimony from the mother, the child's placement provider, the mother's chemical dependency counselor, a DSHS social worker, the mother's chemical dependency assessor and considered more than 40 exhibits.

In relevant part, the mother said she understood the Department had arranged for her to have a psychological evaluation with a parenting component in October 2016 and that she was supposed to complete that assessment pursuant to a court order. The mother explained she did not recall the October 2016 time frame and that it "was a big blur" for her. The mother also acknowledged that, during the dependency process, she did not visit the child for large periods, relapsed into drug use, became homeless, and was barely "able to take care of [her]self at the time."

After the Department called all its witnesses and rested its case-in-chief, the mother chose not to call any witnesses and rested as well. The child's attorney also did not call any witnesses.

Following the presentation of evidence and in announcing its oral ruling on the Department's termination petition, the court addressed the mother's concern regarding a parenting evaluation report as follows:

> [The mother] was required to obtain a psychological evaluation with a parenting component. The Department made a referral in October 2016 to Dr. Stephen Tutty; however, the mother failed to attend. She admitted this during her testimony, that she didn't get this done, that this point in her life was a bit of a blur, and she was homeless.
>
> Just before the original trial date, she did ask to have this appointment set up again, and the Department again made

arrangements for her to attend an evaluation with Dr. Benjamin Johnson in King County in November of 2017. His report remains incomplete, as they have not yet completed the parenting component, and a report has not been generated.

The Court finds that Dr. Johnson's report is not necessary to the Court's consideration of this case. There's no dispute as to the mother's mental health diagnosis of bipolar disorder type I. There's no dispute that she abandon [sic] the child twice during the dependency, going for months and, in fact, nearly a year with no contact with the child or the Department.

On February 5, 2018, the court concluded the Department had met its burden to prove all the statutory elements for termination by clear, cogent, and convincing evidence.[4] Specifically, in key part, the court ruled that "a psychological evaluation with a parenting component is not necessary in light of all of the other evidence, and may be cumulative" and that a continuation of the parent-child relationship would clearly diminish the child's prospects for adoption. The court then entered an order terminating the mother's parental rights to the child. The mother appeals.

## II.
## ANALYSIS

The mother contends the juvenile court abused its discretion and violated her right to due process by denying her request for a continuance to allow her to complete a parenting evaluation. The mother argues the court's refusal to grant a continuance prevented her from providing "additional evidence regarding [her] mental health diagnosis, her treatment options, whether medications were

---

[4] The mother did not ask the court to consider a subsequent report or document produced by Dr. Johnson at any point during the nearly two-month period between the termination trial and entry of the court's order terminating her parental rights as to the child on February 5, 2018.

necessary or appropriate for her, and the impact of her treatment choices on her ability to parent" and denied her "the right to the meaningful assistance of counsel and her right to present relevant, material evidence at the termination trial."[5]

"[P]arents have a fundamental liberty and privacy interest in the care and custody of their children." In re Welfare of N.M., 184 Wn. App. 665, 672, 346 P.3d 762 (2014) (citing Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)). Therefore, due process "requires that parents have the ability to present all relevant evidence for the juvenile court to consider prior to terminating a parent's rights." In re Welfare of R.H., 176 Wn. App. 419, 425-26, 309 P.3d 620 (2013). When deciding a motion to continue, the court must consider "diligence, due process, the need for an orderly procedure, the possible effect on the trial, and whether prior continuances were granted." In re Dependency of V.R.R., 134 Wn. App. 573, 581, 141 P.3d 85 (2006). The denial of a motion to continue does not violate constitutional due process rights unless a parent demonstrates either prejudice or that the result of the trial would have been different. V.R.R., 134 Wn. App. at 581.

---

[5] In addition to the denial of the motion to continue, the mother assigns error to the court's Findings of Fact 2.5(d)(iii) and 2.5(d)(iv), which relate to necessary services offered to the mother. However, she fails to assert any argument on these points in her brief or articulate how those findings are not supported by the evidence. Unchallenged findings that parties fail to specifically address and argue in the argument portion of their brief are considered verities on appeal. In re Estate of Lint, 135 Wn.2d 518, 531-32, 957 P.2d 755 (1998) (instructing that absent direct argument on specific findings of act, the appellate court "would be assuming an obligation to comb the record with a view toward constructing arguments for counsel as to what findings are to be assailed and why the evidence does not support these findings. This we will not and should not do.").

We review a decision to deny a continuance for a manifest abuse of discretion. V.R.R., 134 Wn. App. at 580. We will affirm the decision "'unless no reasonable judge would have reached the same conclusion.'" N.M., 184 Wn. App. at 673 (quoting In re Marriage of Landry, 103 Wn.2d 807, 809-10, 699 P.2d 214 (1985)).

The mother does not reference any legal authority that supports her arguments. She does cite to R.H., but that case involved significantly different facts.

In R.H., the father requested a continuance one month before trial because he had successfully identified a guardian for the children. The Department was optimistic about the placement and had completed the necessary background check. R.H., 176 Wn. App. at 424, 429. However, the Department had failed to complete a home study or transition the children into the placement. R.H., 176 Wn. App. at 423. The delay was not a result of the father's lack of diligence in pursuing a guardianship as an alternative, and in these circumstances, the denial of the father's timely motion for a continuance to complete the investigation was an abuse of discretion. R.H., 176 Wn. App. at 429.

Here, the mother's motion was made on the first day of trial as opposed to a month before. The record suggests a lack of diligence and the failure to take advantage of the prior continuance. The court considered all of the available evidence and testimony relating to the mother's failure to obtain a psychological evaluation with a parenting competent in October 2016. The record shows the

mother did not attempt to secure another parenting evaluation until October 2017. While the record is unclear on why the mother's parenting evaluation component was scheduled for a date after trial, it is clear that the mother did not request a continuance prior to the start of the December 2017 trial.

Additionally, unlike the material evidence about the suitability of an identified guardian as an alternative to termination in R.H., the psychological and parenting evaluation report the mother sought to present in this case, in the court's view, was "not necessary" and "may be cumulative." See N.M., 184 Wn. App. at 673 (we review cases on a fact-specific basis to determine whether the evidence the parent sought to admit was material). The court determined the mother unfit because of her longstanding mental health issues and drug use; her abandoning the child twice during the dependency with no contact with the child or the Department; her homelessness; and her inability to provide a safe and stable home for the child. The record indicated the child was well-adjusted in his placement with relatives and did not seem to have a strong attachment to the mother.

The record also suggests that the mother had adequate assistance of legal counsel. Her counsel attended the trial, offered an opening statement, cross-examined all witnesses, admitted exhibits, and made closing arguments. The mother, however, elected not to call any fact or expert witnesses in support of her case.

In summary, the court's denial of the mother's last-minute motion for a continuance was not manifestly unreasonable under these circumstances. The

11

mother cannot show either prejudice from the court's denial of her motion or that the result would have been different. Accordingly, we hold that the trial court did not abuse its discretion by denying the mother's motion to continue the termination trial.

Affirmed.

Chun, J.

WE CONCUR:

Mann, J.

Appelwick, J.