# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Parental Rights to<br><br>A.S.O.,<br><br>             Minor child.<br><br>STATE OF WASHINGTON,<br>DEPARTMENT OF SOCIAL AND<br>HEALTH SERVICES,<br><br>             Respondent,<br><br>     v.<br><br>FALLON RAE OFFIELD, a/k/a LILY<br>HANEL,<br><br>             Appellant. | No. 79836-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br><br><br><br>FILED: March 9, 2020 |

APPELWICK, C.J. — Offield appeals the termination of her parental rights to her daughter, A.S.O. She argues that the trial court violated her right to due process in denying her request to continue the trial date so she could further engage in settlement negotiations. She additionally contends the Department failed to prove, by clear, cogent, and convincing evidence, that there was little likelihood she would be able to remedy her parental deficiencies within the "near future." We affirm.

FACTS

Fallon Offield has a lengthy history of mental health issues, including psychiatric hospitalizations in 2006, 2012, 2015, and 2017. She has five children, none of whom are in her care.

This appeal concerns A.S.O., Offield's youngest child. When A.S.O. was born on January 14, 2017, the Department of Social and Health Services[1] (Department) identified as risk factors Offield's mental health, her unstable housing situation, and her poor judgment regarding romantic partners and other people she allowed around her children. On May 3, 2017, Offield agreed to the entry of a dependency and dispositional order placing A.S.O. in foster care and requiring Offield to undergo a psychological evaluation, attend parenting classes, work with a Family Preservation Services provider and a public health nurse, and continue with mental health counseling.

Dr. Gary Wieder conducted Offield's psychological evaluation. He diagnosed Offield with major depressive disorder, panic disorder, social phobia, and post-traumatic stress disorder (PTSD). According to Dr. Wieder, Offield had significantly impaired judgment with regard to child safety, and any child in her care was at high risk for abuse or neglect. Both psychological testing and Dr. Wieder's own observations also showed that Offield had a tendency to manufacture or

---

[1] As of July 1, 2018, the Department of Children, Youth, and Families has assumed the functions and duties of the Department of Social and Health Services related to child welfare services. See RCW 43.216.906.

exaggerate physical ailments. Dr. Wieder recommended Offield receive trauma-based mental health treatment and continue taking psychiatric medication. He noted that Offield's prognosis was guarded and recommended A.S.O. not be returned to her.

Offield initially participated in court-ordered services and at times appeared to make progress. However, she eventually began exhibiting heightened symptoms of mental illness, including paranoia and somatization (the expression of emotional distress through physical symptoms). She began avoiding appointments with her mental health counselor and psychiatric nurse practitioner. She refused to meet with the Department social worker, believing that the social worker was stalking her. The Department social worker helped Offield secure housing at Mary's Place, a transitional housing facility where A.S.O. could have lived with her. Offield refused this option, and also refused to tell the Department where she was living.

The Department filed a petition to terminate Offield's parental rights. At the time of trial, A.S.O. was two years old and had never lived with Offield. Offield refused to attend much of the trial and was frequently uncooperative with efforts to secure her attendance either in person or by phone. After hearing from eight witnesses and admitting 18 exhibits, the trial court entered an order terminating Offield's parental rights to A.S.O.[2] Offield appeals.

_____

[2] The parental rights of A.S.O.'s father were terminated by default and are not at issue in this appeal.

3

DISCUSSION

Parents enjoy fundamental liberty interests in the continued care, custody, and companionship of their children. Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Termination of the parent-child relationship involves a two-step process. In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010). First, the Department must prove the six termination factors set forth in RCW 13.34.180(1) by clear, cogent, and convincing evidence. A.B., 168 Wn.2d at 911. One of these factors is that "there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future." RCW 13.34.180(1)(e). If this burden is satisfied, the court must also find by a preponderance of the evidence that termination is in the best interests of the child. RCW 13.34.190; In re Dependency of K.N.J., 171 Wn.2d 568, 577, 257 P.3d 522 (2011).

Where, as here, the trial court has weighed the evidence, appellate review is limited to determining whether substantial evidence supports the court's findings of fact and whether those findings support the court's conclusions of law. In re Dependency of P.D., 58 Wn. App. 18, 25, 792 P.2d 159 (1990). Unchallenged findings of fact are verities on appeal. In re Welfare of A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015). Challenged findings will be upheld "[i]f there is substantial evidence which the lower court could reasonably have found to be clear, cogent[,] and convincing." In re Welfare of Aschauer, 93 Wn.2d 689, 695, 611 P.2d 1245

4

(1980). Clear, cogent, and convincing evidence exists when the ultimate fact in issue is shown to be "'highly probable.'" In re Dependency of T.L.G., 126 Wn. App. 181, 197, 108 P.3d 156 (2005) (quoting In re Dependency of H.W., 92 Wn. App. 420, 425, 961 P.2d 963, 969 P.2d 1082 (1998)). We defer to the trier of fact on issues of conflicting testimony, credibility of the witnesses, and the weight or persuasiveness of the evidence. State v. Killingsworth, 166 Wn. App. 283, 287, 269 P.3d 1064 (2012). Such deference is particularly important in proceedings affecting the parent and child relationship because of "the trial judge's advantage in having the witnesses before him or her." A.W., 182 Wn.2d at 711.

I.   Continuance

Offield argues that the trial court violated her right to due process by denying her motion to continue the termination trial. She contends that a continuance would have given her a final opportunity to participate in a settlement conference "at which she could have agreed to an open adoption and retained some of her parental rights."

Trial was initially scheduled for September 17, 2018. Parties agreed to continue the trial date three times—to November 19, 2018, to January 22, 2019, and to January 28, 2019—for various reasons, primarily discovery issues and attorney unavailability.

On January 24, Offield sought a fourth continuance of the trial date, requesting additional time for settlement negotiations. Offield stated that she had

5

met with A.S.O.'s foster parents earlier that day to discuss an open adoption agreement. She stated that they had made "great progress" but had not yet reached an agreement. The trial court denied the motion. The trial court noted that the trial was not likely to begin as scheduled on January 28 due to judicial unavailability. The trial court remarked that the parties had plenty of time to continue settlement negotiations.

Trial commenced on February 6. Due in part to Offield's refusal to attend court or cooperate with accommodations made for her attendance, the trial did not conclude until February 27.

We review a trial court's decision to deny a continuance for manifest abuse of discretion. In re Dependency of V.R.R., 134 Wn. App. 573, 580-81, 141 P.3d 85 (2006). A trial court abuses its discretion when it exercises that discretion based on untenable grounds or reasons. Id. at 581. "'[T]he trial court's decision will be affirmed unless no reasonable judge would have reached the same conclusion.'" In re Welfare of N.M., 184 Wn. App. 665, 673, 346 P.3d 762 (2014) (quoting In re Marriage of Landry, 103 Wn.2d 807, 809-10, 699 P.2d 214 (1985)). When denial of a motion to continue allegedly violates constitutional due process rights, the appellant must show either prejudice by the denial or the result of the trial would likely have been different if the continuance was granted. V.R.R., 134 Wn. App. at 581.

The record does not support Offield's claim that she was prejudiced by the denial of the continuance. The trial had been continued three times already. And, Offield's trial ultimately did not conclude until more than a month after she requested the fourth continuance. Nothing prevented Offield from continuing to negotiate an alternate resolution up to, and even during, the trial. Moreover, Offield fails to show that the result would likely have been different had the continuance been granted. At the time of trial, Offield was refusing to interact with the Department social worker, and was also frequently refusing to come to the courthouse. Denial of the motion to continue the trial was not a manifest abuse of discretion.

II.    Likelihood of Return in the Near Future

Offield challenges the evidence supporting the finding that there was little likelihood that her parental deficiencies could be corrected within the near future. She argues that, because she exhibited substantial improvements in her mental health and her judgment during the dependency proceedings, the trial court erroneously applied a rebuttable presumption to the "little likelihood" factor.

The focus of RCW 13.34.180(1)(e) is "whether parental deficiencies have been corrected." In re Dependency of T.R., 108 Wn. App. 149, 165, 29 P.3d 1275 (2001). If the Department proves that all necessary services were offered, and the deficiencies are not substantially improved within 12 months of the dependency order, a rebuttable presumption arises that this factor is established. RCW

7

13.34.180(1)(e). But, the presumption shifts only the burden of production to the parent. In re Welfare of C.B., 134 Wn. App. 942, 955, 143 P.3d 846 (2006). Thus, even if the presumption applies, the State retains the burden of convincing the court that it is highly probable that the parent would not have improved in the near future. Id. at 955-56.

Here, even if the trial court erroneously found that the statutory presumption applied, any such error was harmless because the Department established by clear, cogent, and convincing evidence that there was little likelihood A.S.O. could be returned to Offield in the near future. Offield had a lengthy history of mental health issues impacting her ability to safely care for a child. While Offield initially participated in mental health services, by the time of trial, she had stopped seeing both her mental health counselor and her psychiatric nurse practitioner. Offield's withdrawal from services coincided with an increase in Offield's paranoia and erratic behavior. For example, when Offield insisted that she could not come to the courthouse for trial, the trial court suggested that the Department social worker drive to Offield's home and bring Offield a prepaid phone so that she could attend telephonically. Offield refused to give the Department social worker her address, or open her door once the social worker managed to locate where she was living. Offield testified emphatically that the Department social worker was stalking and threatening her, and she sent a series of text messages to one of A.S.O.'s therapy providers during the trial claiming the social worker was intentionally harassing her.

Moreover, Offield continued to display impaired judgment and decision-making regarding her living situation and relationships. The trial court noted concerns that Offield appeared heavily influenced by a man she had befriended named Peter Gullberg. The trial court admitted evidence showing Gullberg had previously been in a relationship with a woman in a wheelchair and had violently assaulted her, resulting in her death. Offield also uses a wheelchair, but did not consider this evidence to be important. On the advice of a man who may have been Gullberg, Offield declined the Department's offer of a transitional housing facility where A.S.O. could be placed with her. Instead, Offield moved into a house with two friends of Gullberg's, whose last names she did not know. Offield refused to allow the Department to visit the house or conduct background checks on anyone living there.

Finally, even where evidence shows that a parent may eventually be capable of correcting deficiencies, termination is appropriate if those deficiencies will not be corrected in the near future. In re Welfare of A.G., 155 Wn. App. 578, 590, 229 P.3d 935 (2010), rev'd on remand on other grounds, 160 Wn. App. 841, 248 P.3d 611 (2011). "A determination of what constitutes the near future depends on the age of the child and the circumstances of the placement." T.L.G., 126 Wn. App. at 204. "A matter of months for young children is not within the foreseeable future to determine if there is sufficient time for a parent to remedy his or her

9

parental deficiency." In re Welfare of M.R.H., 145 Wn. App. 10, 28, 188 P.3d 510 (2008).

The trial court found that "[d]ue to the child's young age, the 'foreseeable future' is a limited length of time and should be measured at most by months and certainly not by years." Offield does not specifically challenge this finding and it is a verity on appeal. A.S.O. was barely two years old at the time of the termination trial and had been out of Offield's care since birth. Offield had only limited visitation with A.S.O. in controlled settings. She refused the Department's proposals to allow her to have longer, less restricted visits in the community. There was no evidence from which this court could infer that a return of the child was possible or imminent. Substantial evidence supported the trial court's finding that A.S.O. could not have returned to Offield's care in the near future.

Affirmed.

Appelwick, C.J.

WE CONCUR:

Bowman, J.

Chun, J.