[No. 5997–5–II.   Division Two.   April 26, 1982.]

*In the Matter of the Adoption of*
BABY BOY C.[1]

---

[1]Fictitious identities have been assigned to the child and its parents in this opinion so as to minimize unnecessary exposure of their true identity to the public.

640

*Eugene M. Moen,* for appellants.

*Patrick McIntyre, Gerald R. Tarutis,* and *McIntyre & Tarutis,* for respondent.

*Jerry M. Dolan,* for guardian ad litem.

PETRICH, A.C.J.—The conflicting interests of the natural father and those of prospective adoptive parents to a child born out of wedlock are the subject matter of this appeal. Two issues are raised. The first issue, raised by the prospective adoptive parents as appellants, is whether the individual thought to be the child's father when proceedings to terminate his parental rights were initiated, ancillary to an adoption, is to be treated as an alleged father or a parent where, after the proceedings were initiated but before the hearing on the termination of his rights, he was judicially declared to be the natural father and parent of the child. By cross appeal the man declared to be the father raises the second issue: Whether the court had jurisdiction to hear the adoption petition where the prospective adoptive parents though residents of this state did not file the petition in the county of their residence or in the county of domicile of the child. The trial court denied the motion to dismiss for lack of jurisdiction and further ruled that the man later determined to be the natural father was for the purpose of the termination of parental rights a parent whose rights could only be terminated by a showing of dependency. The prospective adoptive parents were unable to establish dependency and the court dismissed the peti-

tion for adoption. We granted accelerated review because of the nature of the case and affirm the judgment below.

The unwed mother, Ms. C., is a permanent resident of Arizona. She came to Washington to give birth to her child, planning to return to Arizona afterwards. She decided while here that she would give the child up for adoption and signed a consent to adoption on August 18, 1981 relinquishing custody of her baby ancillary to the adoption proceedings initiated in Kitsap County by appellants then and now residents of King County, Washington. The child was subsequently born on August 20. A Petition for Termination of her parental rights was filed and an Order of Relinquishment was entered on August 21, 1981. Edward Grant, the man then thought to be the natural father who was also an Arizona resident, was mailed a copy of Ms. C.'s petition[2] and a consent to adoption form for him to sign. Ms. C. had stated her belief that he would consent. Mr. Grant declined to give his consent, however, and instead consulted an Arizona attorney who contacted an attorney in Washington with a view towards contesting the adoption. On September 16, 1981, Grant filed a Motion to Dismiss the adoption petition in which he acknowledged his paternity of Ms. C.'s child. He also filed on October 6, 1981 a petition to determine parentage, under the Uniform Parentage Act. RCW 26.26. Mr. Grant and Ms. C. were married on October 24, 1981, and 2 days later the court on stipulated facts entered an order on Grant's petition which determined him to be the child's natural father. After the entry of this order and before the hearing on the petition to terminate Grant's rights as the child's father, the parties applied to the court for a pretrial order to determine the standards to be applied in the termination proceedings. The appellants urged that since Grant's status at the inception of the pro-

---

[2]The petition filed on August 21, 1981, did not meet the notice requirements of RCW 26.32.038 but was apparently contemplated to be filed under that provision. It could not have been filed pursuant to RCW 26.32.032 as it fails to include the petitioner's residence or the basis for the court's jurisdiction, two requirements the absence of which constitute grounds for dismissal. RCW 26.32.036(2).

ceedings was no more than that of an alleged father, his rights should be terminated pursuant to RCW 26.32.054,[3] as provided in RCW 26.32.032. Grant, on the other hand, argued that since he was judicially determined to be the natural father the termination petition should be treated as a petition for dependency and proceedings should be held pursuant to RCW 13.34.180[4] also as provided in RCW 26.32.032. The trial court ruled that Mr. Grant's rights to the child could only be terminated pursuant to the dependency provisions since prior to the hearing on termination an order was entered under the Uniform Parentage Act

---

[3]An alleged father includes a person alleged or thought to be the natural father who has never been married to the mother. RCW 26.32.015(1). RCW 26.32.054 in pertinent parts provides as follows:

If the alleged father appears and contests the termination of *his parental rights* and responsibilities by filing a claim under chapter 26.26 RCW, the court shall take the following action:

(1) If the alleged father has failed, without good cause for the failure, to establish any relationship with the child, and did not provide any support or care for the mother during pregnancy or for either the mother or child after the child's birth, until notice of hearing was served upon him, the court shall terminate his rights to the child.

(2) If the alleged father has, before notice of the hearing was served upon him, established any relationship with the child, or has provided any support or care for the mother during pregnancy, or for either the mother or child after the child's birth, the rights of the alleged father shall not be terminated except as otherwise provided by this chapter.

(Italics ours.)

[4]In addition to meeting strict requirements providing reasonable opportunities to the parent to correct deficiencies of parenthood a parent's rights can only be terminated under RCW 13.34.180 after an initial showing that the child is a dependent child as defined by RCW 13.34.030(2) which provides:

"Dependent child" means any child:

(a) Who has been abandoned; that is, where the child's parent, guardian, or other custodian has evidenced either by statement or conduct, a settled intent to forego, for an extended period, all ntal rights or all parental responsibilities despite an ability to do so; or

(b) Who is abused or neglected as ι .ned in chapter 26.44 RCW; or

(c) Who has no parent, guardian, o · ;ustodian willing and capable of adequately caring for the child, such that ¨ ₹ child is in circumstances which constitute a danger of substantial damagε the child's psychological or physical development.

The adoptive parents concede that thε were unable to meet this test.

finding him to be the natural father and thus the child's parent as defined in RCW 26.32.015(4).[5]

We first address the issue of the court's jurisdiction to hear the adoption petition.

█ Adoption proceedings, unknown at common law, are purely statutory in nature and adoption statutes require strict construction. *In re Santore,* 28 Wn. App. 319, 623 P.2d 702 (1981). However, these statutes must be construed to give effect to their manifest intent and beneficial aims. *Id.* In the filing of a petition for adoption, the petitioner may file either in the superior court of the county in which he resides or in the county in which the adoptee is domiciled. RCW 26.32.020. An earlier version of this statute was held to be jurisdictional in nature, and failure to file in the proper county left the trial court without jurisdiction to hear the adoption petition. *Knight v. Gallaway,* 42 Wash. 413, 85 P. 21 (1906); *see also Platt v. Magagnini,* 110 Wash. 39, 187 P. 716 (1920). These cases dealt with petitioners who were nonresidents of Washington, however. The early Washington courts were likely concerned with the possibility that this state would approve adoptions of children with no connection to Washington by residents of other states.[6]

█ The Restatement view of jurisdiction in adoption proceedings is that a state has jurisdiction where:

(a) it is the state of domicil of either the adopted child or the adoptive parent, and

(b) the adoptive parent and either the adopted child or the person having legal custody of the child are subject to its personal jurisdiction.

Restatement (Second) of Conflict of Laws § 78, at 235 (1971). The Restatement position has been increasingly

---

[5]RCW 26.32.015(4) provides:

"'Parent' means the natural or adoptive mother or father or legal father of a child, regardless of the marital status of the parent."

[6]The early statute did not include the alternative of filing in the county of the child's domicile. Therefore, if nonresidents were to be allowed to petition for adoption in this state, it would be possible for none of the parties involved to have any connection with this state whatsoever.

accepted by other jurisdictions. *See, e.g., In re Estate of Neuwirth,* 155 N.J. Super. 410, 382 A.2d 972 (1978); *In re Adoption of E.W.C.,* 89 Misc. 2d 64, 389 N.Y.S.2d 743 (1976); *see also Waller v. Ellis,* 169 Md. 15, 179 A. 289 (1935). In light of the modern trend to more liberally construe subject matter jurisdiction in adoptions, we hold that the traditional requirements of jurisdiction are met if this state is either the state of the child's domicile or that of the adoptive parents. *See In re Adoption of E.W.C., supra.* The trial court below had subject matter jurisdiction over the adoption because the adoptive parents are domiciliaries of Washington.

The remaining issue raised in this appeal deals with the termination of the natural father's rights to his child.

Appellants contend that a proper interpretation of RCW 26.32.054 fixes the father's status as of the inception of termination proceedings. If at such time he was an alleged father then he should not thereafter be permitted to change his status to that of a parent by marrying the child's mother or acknowledging his paternity. They urge important policy considerations support this view, namely the need for prompt adoption decisions for newborn infants and the need for stability in adoptive placements. To permit the father to change the "ground rules" in midstream they contend would inject an element of uncertainty and delay that will discourage the emotional and financial investment that prospective adoptive parents will risk in private adoption placements.

■ This argument, however, ignores the father's interest. A natural father has a cognizable and substantial interest in his child which is constitutionally protected. *Stanley v. Illinois,* 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972). Terminating the father's interest in his child requires proof that is at minimum clear, cogent and convincing. *Santosky v. Kramer,* ___ U.S. ___, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982); *In re Sego,* 82 Wn.2d 736, 513 P.2d 831 (1973); *see also* RCW 13.34.190. If a natural father's relationship with his child is terminated on lesser grounds,

then his rights have not been preserved.

■ Appellants would ask that RCW 26.32.054 be read in isolation. Each legislative act is a component part of an extensive system of written laws and should not be applied in a vacuum. 2A C. Sands, *Statutory Construction* § 53.01 (4th ed. 1973); *see also State ex rel. Reed v. Spanaway Water Dist.,* 38 Wn.2d 393, 399, 229 P.2d 532 (1951). The section we are asked to interpret specifically refers to the Uniform Parentage Act, RCW 26.26. The legislature in this act explicitly set forth the effect of a decree determining parent–child relationship. It states:

> The judgment and order of the court determining the existence or nonexistence of the parent and child relationship is *determinative for all purposes.*

(Italics ours.) RCW 26.26.130(1).

■ Reading these acts together we hold that where a decree under the Uniform Parentage Act is entered which establishes a man as being the natural father of the child before the hearing on the termination of his parental rights, such rights can only be terminated by the parent termination standards in dependency petitions. *See In re Rogers,* 31 Wn. App. 372, 641 P.2d 733 (1982). This is so even though the decree on parentage was entered after the termination proceedings were initiated. We do not believe as appellants contend that somehow the "ground rules" were changed by the action of the child's father in the case. The decree on parentage did not alter the relationship of the father and child. It was a judicial recognition of the biological fact of parenthood.[7]

The judgment below is affirmed.

PETRIE, J., and JOHNSON, J. Pro Tem., concur.

---

[7] It should be noted that counsel for the appellants in this court is not the same attorney who represented the appellants in superior court.