# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Dependency of: | No. 58595-2-II |
| B.H.-W., | PUBLISHED OPINION |
| A Minor Child. | |

CHE, J. — JW sought discretionary review of the trial court's determination that he, as the alleged biological father of BHW, had no standing to participate in BHW's dependency proceedings.

BHW was born substance affected. The Washington State Department of Children, Youth, and Families (DCYF) filed a dependency petition alleging that BHW was dependent and identifying their mother, HH, and their alleged father, JW. Based largely on the trial court's reading of former RCW 13.34.030(19) (2021) and RCW 26.26A.100(5), the trial court dismissed JW from the dependency proceeding, concluding that alleged fathers categorically lack standing to participate in dependency proceedings. This court granted JW's request for discretionary review. JW subsequently established biological parentage as to BHW through genetic testing, mooting the appeal.

We conclude that the moot standing issue warrants our review because the issue presents a matter of continuing and substantial public importance. In reviewing the issue, we hold that alleged biological parents have standing to be given notice and an opportunity to appear, to assert

their position, and to participate until their biological parentage claim is determined because they are within the zone of interests sought to be protected by chapter 13.34 RCW—the Juvenile Court Act in cases relating to dependency of a child and the termination of a parent and child relationship—and alleged biological parents would suffer an injury in fact by being excluded from dependency proceedings while parentage is established. However, because alleged biological parents do not fall under chapter 13.34 RCW's definition of a "parent," their rights in a dependency proceeding are not the same as parents who meet this definition. Beyond the standing issue before us, we decline to delineate further any other rights an alleged biological parent might have in a dependency proceeding. We reverse the moot ruling dismissing JW from this matter and remand for further proceedings.[1]

## FACTS

HH gave birth to BHW, who was born with traces of amphetamines, opioids, and methadone in their system. HH fell asleep during a bonding period with BHW, which concerned hospital staff. HH identified JW as the alleged biological father, but JW was not listed on the birth certificate.

In April 2023, three days after BHW's birth, DCYF filed a dependency petition alleging that BHW was dependent and identifying the child's biological mother as HH and the child's alleged biological father as JW. DCYF sought to place BHW into shelter care, and the trial court granted the request.

---

[1] Clerk's Papers (CP) at 135-139 (Interim Review Hearing Order).

In May 2023, JW had not yet taken action to establish himself as a biological parent, and the trial court ordered JW to establish paternity within 90 days. The court also set a hearing to address whether JW had standing to participate in the dependency proceedings. In June, the trial court held the hearing, which JW participated in. JW and the State both agreed and argued that an alleged biological parent has standing to participate in shelter care and dependency proceedings.

Following the hearing, the trial court entered a written ruling and determined that the court could only establish a dependency against a parent, guardian, or legal custodian of a child. Based on its reading of several statutes, including RCW 13.04.011, former RCW 13.34.030(19), and RCW 26.26A.100(5), the trial court further determined that the definition of parent under chapter 13.34 RCW does not encompass an alleged biological parent.[2] Thus, the trial court ruled that alleged fathers do not have standing to participate in dependency proceedings until they establish paternity and that the court could not establish a dependency, shelter care, or order services regarding an alleged father who has not yet established paternity.

In August 2023, the trial court dismissed JW from the dependency case finding, "He is not a party and does not have standing in the case." Clerk's Papers (CP) at 138. In support of its order, the court made, among others, four findings: (1) Finding 2.1.3 that JW remains an alleged

---

[2] RCW 13.04.011(7) provides, "'[p]arent' or 'parents,' except as used in chapter 13.34 RCW, means that parent or parents who have the right of legal custody of the child." Former RCW 13.34.030(19) (2021), *amended by* LAWS OF 2024, ch. 328, § 1, provides that, for purposes of chapter 13.34 RCW, "'[p]arent' means the biological or adoptive parents of a child, or an individual who has established a parent-child relationship under RCW 26.26A.100." RCW 26.26A.100 provides an exhaustive list of avenues for establishing a parent-child relationship. When the Washington State Legislature amended this statute, effective June 6, 2024, it merely changed the subsection the provision appears in, not the contents of the provision. LAWS OF 2024, ch. 328, § 101.

parent, (2) Finding 2.1.13 that alleged fathers do not have standing to appear in dependency proceedings, (3) Finding 2.1.14 that alleged fathers are not entitled to court-appointed counsel, and (4) Finding 2.1.15 that the court lacked authority to establish either a shelter care order or dependency against alleged fathers.

JW filed a motion for discretionary review in this court.[3] The parties previously stipulated that the case involved a controlling question of law for which there is a substantial ground for a difference of opinion.[4] Our commissioner granted the motion for discretionary review on the discreet issue of "whether J.W. as the alleged father has standing to appear in B.H.W.'s dependency."[5]

In March 2024, during the pendency of this matter, JW established biological parentage as to BHW through genetic testing.[6]

ANALYSIS

I. MOOTNESS

The State argues that we should review this moot case as a matter of continuing and substantial public interest because (1) an authoritative determination is necessary to provide

---

[3] Mot. for Discr. Rev. & Supp. Br., *In re Dependency of B.H.-W.,* No. 58595-2-II, (Wash. Ct. App. Nov. 16, 2023).

[4] CP at 154 (Stip. for Discr. Rev.).

[5] Ruling Grant. Discr. Rev. & Stay. Trial Ct., *In re Dependency of B.H.-W.,* No. 58595-2-II at 9, (Wash. Ct. App. Jan. 26, 2024).

[6] Letter from Mensing, Assistant Att'y Gen., to Comm. Triebel, *In re Dependency of B.H.-W.*, No. 58595-2-II, (Wash. Ct. App. April 4, 2024); CP at 271-73 (DNA results).

guidance to the lower courts on the repeating issue of whether alleged parents have standing in dependency actions and (2) it is crucial for the alleged parentage to be determined at the outset of the dependency proceeding as such determinations have long-term implications for the child. We agree.

"A case is moot when the appellate court can no longer provide effective relief." *In re Dependency of L.C.S.*, 200 Wn.2d 91, 98, 514 P.3d 644 (2022). We have the discretion to review a moot issue if it presents a matter of continuing and substantial public interest. *Id.* at 99. "In deciding whether a case presents an issue of continuing and substantial public interest, this court considers the following factors: whether the issue is of public or private nature, whether an authoritative determination is desirable to provide future guidance, and whether the issue is likely to reoccur." *Id.* We "also consider the adverseness of the parties, the quality of the advocacy, and the likelihood that the issue will escape review." *Id.*

Here, the issue of whether alleged biological parents have standing in dependency matters is public in nature because it has an impact on family relationships and, through the goals of the dependency system, "the preservation of families is a paramount interest shared by the parents, the child, and . . . the [State]." *In re Welfare of D.E.*, 196 Wn.2d 92, 103, 108, 469 P.3d 1163 (2020) (discussing the State's interest in reunification efforts as well as ensuring the resolution of dependency proceedings is "speedy and fiscally responsible"). A determination here will provide guidance for future courts facing the issue because there is a lack of judicial opinions addressing this issue. Additionally, because, like in this case, alleged biological parents will likely moot this issue by engaging in genetic testing or other avenues for establishing parentage, this issue will

likely escape review in the future.[7]  Thus, we hold that reviewing the issue of whether alleged

biological parents have standing in dependency proceedings is a matter of continuing and

substantial public interest.

## II.  STANDING

JW argues that alleged biological parents have standing to appear and defend against a

dependency petition.  To that end, JW assigns error to finding 2.1.13.[8, 9]  We agree that alleged

biological parents have standing to participate in dependency proceedings until their alleged

parentage is determined.

A.     *Legal Principles*

We review findings of fact made in a dependency proceeding to assess whether such

findings are "supported by substantial evidence." *In re Welfare of A.L.C.*, 8 Wn. App. 2d 864,

871, 439 P.3d 694 (2019).  If, when the evidence is viewed in the light most favorable to the

prevailing party, a rational trier of fact could have found the fact by a preponderance of the

evidence, the evidence is substantial.  *Id*.  But when, as is here, a trial court's finding in a

---

[7]  As the trial court noted, this is an issue that already commonly arises in "numerous" dependency proceedings.  RP at 9.

[8] JW also assigns error to finding 2.1.3 which provides, "There has been no action to establish him as a biological parent. [JW] has not filed an acknowledgment of paternity."  CP at 136.  Since this appeal began, JW has been established as the biological parent of BHW.  So, the challenge to this finding is moot with no basis to address this further.

[9] JW also assigns error to findings 2.1.14 and 2.1.15 which provide, "The court finds that alleged fathers are not entitled to court-appointed counsel" and that the trial court does not have authority to establish shelter care against, find a dependency for, or order services for an alleged father.  CP at 136.  We decline to review the assignment of error to findings 2.1.14 or 2.1.15 because they are outside the scope of the discreet issues upon which discretionary review was granted.

dependency proceeding is a determination "'made by a process of legal reasoning from, or interpretation of the legal significance of, the evidentiary facts, it is a conclusion of law.'" *Id.* (quoting *Goodeill v. Madison Real Est.*, 191 Wn. App. 88, 99, 362 P.3d 302 (2015)). We review such conclusions of law de novo. *Id.*

"'Standing' generally refers to a particular party's right to bring a legal claim." *State v. Wallahee*, 3 Wn.3d 179, 185, 548 P.3d 200 (2024) (quoting *Wash. State Hous. Fin. Comm'n v. Nat'l Homebuyers Fund, Inc.*, 193 Wn.2d 704, 711, 445 P.3d 533 (2019)). The common law doctrine of standing prohibits a litigant from raising another's legal right. *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 802, 83 P.3d 419 (2004). Therefore, so long as a party "has a distinct and personal interest in the outcome of the case," such a party has standing to raise an issue regarding a legally protected right. *Pac. Marine Ins. Co. v. Dept' of Revenue*, 181 Wn. App. 730, 740, 329 P.3d 101 (2014) (internal quotation marks omitted) (quoting *Timberlane Homeowners Ass'n, Inc. v. Brame*, 79 Wn. App. 303, 307, 901 P.2d 1074 (1995)).

B. *Standing for Alleged Biological Parents Fails Under Former RCW 13.34.030(19)'s Meaning of a Biological Parent*

JW contends that he has "parental party standing" through the meaning of "parent" under former RCW 13.34.030(19). JW asserts that former RCW 13.34.030(19) is ambiguous as to whether the chapter's meaning of a "parent" includes an alleged biological parent because former RCW 13.34.030(19), which defines what a parent is for dependency purposes, does not define what constitutes a biological parent. JW submits that we, thus, should employ statutory

construction to determine that an alleged biological parent is a biological parent within the meaning of former RCW 13.34.030(19).

In contrast, the State argues that "parent" within the meaning of former RCW 13.34.030(19) is unambiguous and does not include alleged biological parents. We agree with the State.

We engage in statutory interpretation to ascertain and implement the legislature's intent. *In re Pers. Restraint of Ansell*, 1 Wn.3d 882, 900, 533 P.3d 875 (2023). When the statute's meaning is facially plain, we give effect to its meaning as an expression of legislative intent. *Id*. "Plain meaning is discerned from both the text of the statute, the statutory scheme as a whole, and related statutes." *Id*. In our plain language analysis, "we do not add words where the legislature has chosen not to include them." *Langhorst v. Dep't of Labor & Indus.*, 25 Wn. App. 2d 1, 9-10, 522 P.3d 60 (2022), *review denied*, 1 Wn. 3d 1010 (2023). But, if the statute is ambiguous, we then resort to statutory construction. *Ansell*, 1 Wn.3d at 900.

For the purposes of chapter 13.34 RCW, former RCW 13.34.030(19) provides, "'[p]arent' means the biological or adoptive parents of a child, or an individual who has established a parent-child relationship under RCW 26.26A.100." RCW 26.26A.100 provides seven different ways for an individual to establish a parent-child relationship, but none of the methods allow an individual to merely allege that they are the biological parent of the child. Likewise, the plain language in former RCW 13.34.030(19) does not encompass "alleged" biological parents. Even though the statute does not define the term "biological parents," the statute is not ambiguous as to whether it covers alleged biological parents. As, per the unambiguous language of the statute, the legislature

did not include "alleged" before the term biological parents, we decline to read that qualifier into the statute. Therefore, we hold that "parent" within the meaning of former RCW 13.34.030(19) does not include alleged biological parents and, thus, alleged biological parents like JW do not have standing through the plain language of former RCW 13.34.030(19).

Because we hold that alleged biological parents do not meet chapter 13.34 RCW's specific definition of a "parent," alleged biological parents do not have the same rights as "parents" under the chapter but we decline to delineate further what rights they do have beyond the standing question before us.

C.      *Alleged Biological Parents Have Standing in Dependency Actions Under Constitutional Due Process*

As an alternative basis for standing, the State contends that alleged biological parents, while not particularly named in the statute, still have standing in dependency actions because such individuals fall within the zone of interests sought to be protected by the state dependency statutes and because due process requires alleged biological parents to receive notice of and an opportunity to participate in dependency proceedings. We agree.

"Standing is not intended to be a high bar." *Wash. Fed'n. of State Emps., Council 28 v. State*, 2 Wn.3d 1, 15, 534 P.3d 320 (2023). We analyze a question of standing by applying a two part test: "(1) whether the interest sought to be protected is 'arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question' and (2) whether the petitioners have asserted 'injury in fact.'" *Wash. Bankers Ass'n v. State*, 198 Wn.2d 418, 455, 495 P.3d 808 (2021) (internal quotation marks omitted) (quoting *Grant County Fire Prot. Dist.*

*No. 5*, 150 Wn.2d at 802). Both prongs of the test must be met to establish standing. *Wash. State Hous. Fin. Comm'n*, 193 Wn.2d at 712. We review determinations regarding a party's standing de novo. *Id. at* 711.

    1.     *Zone of Interest*

When engaging in standing's zone of interest inquiry, this court "'focuses on whether the Legislature intended the agency to protect the party's interest when taking the action at issue.'" *Chelan County v. Nykreim*, 146 Wn.2d 904, 937, 52 P.3d 1 (2002) (quoting *Seattle Bldg. & Const. Trades Council v. Apprenticeship & Training Council*, 129 Wn.2d 787, 797, 920 P.2d 581 (1996)). Additionally, "we look to the statute's general purpose." *Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.*, 169 Wn. App. 111, 119, 279 P.3d 487 (2012).

The legislature specified what they intended to protect in chapter 13.34 RCW:

> The legislature declares that the family unit is a fundamental resource of American life which should be nurtured. Toward the continuance of this principle, the legislature declares that the family unit should remain intact unless a child's right to conditions of basic nurture, health, or safety is jeopardized. When the rights of basic nurture, physical and mental health, and safety of the child and the legal rights of the parents are in conflict, the rights and safety of the child should prevail. In making reasonable efforts under this chapter, the child's health and safety shall be the paramount concern. The right of a child to basic nurturing includes the right to a safe, stable, and permanent home and a speedy resolution of any proceeding under this chapter.

RCW 13.34.020.

The clear purpose of chapter 13.34 RCW is to protect and nurture the family unit with the child's health and safety being the paramount concern. An alleged biological parent's due process rights in dependency proceedings falls within chapter 13.34 RCW's zone of interest because, through claiming a parentage relationship, the alleged biological parent's interest in

being a part of the family unit directly aligns with the legislature's expressed interest in protecting and supporting the same unit. Considering an alleged biological parent's interest also prevents a possible biological parent from being deprived of timely notice and an opportunity to participate in dependency proceedings. An additional interest identified in RCW 13.34.020 is ensuring children receive a speedy resolution to any proceedings under the chapter. Affording alleged biological parents the ability to participate at the beginning of the dependency proceedings as they attempt to establish parentage, instead of intermediately after they acquire genetic testing or pursue another method to establish parentage, facilitates the speedy resolution of dependency proceedings. Thus, we hold that an alleged biological parent's interest in being afforded some procedural protections for chapter 13.34 RCW proceedings, until the alleged biological claim of parentage is determined, falls within the chapter's zone of interest.

2. *Injury in Fact*

The State maintains that excluding alleged fathers from dependency proceedings results in an injury in fact because it deprives them of procedural protections and reunification efforts. We agree that excluding alleged fathers constitutes an injury in fact.

To sufficiently establish standing, an injury in fact must be more than speculative or indirect. *Chelan Basin Conservancy v. GBI Holding Co.*, 190 Wn.2d 249, 272, 413 P.3d 549 (2018).

Parents have a fundamental liberty and privacy interest in the care, custody, and companionship of their children. *Wrigley v. State*, 195 Wn.2d 65, 76, 455 P.3d 1138 (2020); *see also D.E.*, 196 Wn.2d at 102 (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71

L. Ed. 2d 599 (1982) (plurality opinion)). And our courts have recognized such rights for almost as long as Washington State's statehood. *See Lovell v. House of the Good Shepherd*, 9 Wash. 419, 422, 37 Pac. 600 (1894). Even when parentage is not yet established, our court has recognized that "a natural father has a cognizable and substantial interest in his child which is constitutionally protected." *In re Adoption of Baby Boy C.*, 31 Wn. App. 639, 644, 644 P.3d 150 (1982) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)).[10] Because of the fundamental nature of a natural parent's rights under the 14th Amendment to the United States Constitution, our courts have held that natural parents are owed "fundamental fairness" before interfering with their rights. *In re Dependency of K.N.J.*, 171 Wn.2d 568, 574, 257 P.3d 522 (2011) (quoting *In re Pers. Restraint of Blackburn*, 168 Wn.2d 881, 885, 232 P.3d 1091 (2010)).

Here, the trial court categorically excluded JW from the dependency proceedings by determining that JW lacked standing to participate prior to determining whether JW was BHWs biological parent. Categorically excluding alleged biological parents from such proceedings runs the risk of unlawfully interfering with the constitutional due process right to fundamental fairness of alleged biological parents who are later determined to be a biological parent. Our courts have

---

[10] In *In re Adoption of Baby Boy C.*, an adoption petition was filed prior to an alleged father establishing parentage. 31 Wn. App. at 641. Once the proceedings had begun but before a termination hearing occurred, the alleged father acquired legal parentage. *Id.* Prospective adoptive parents argued that, because the father's parentage was not established at the inception of a proceeding to terminate any parentage rights, his status as an alleged parent was fixed for the purposes of those proceedings. *Id.* at 644. However, acknowledging the constitutional rights of natural parents, this court rejected that argument and held that "[t]he decree on parentage did not alter the relationship of the father and child. It was a judicial recognition of the biological fact of parenthood." *Id.* at 645.

frequently described the rights of parents as a "sacred right," "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Coal. for the Homeless v. Dep't of Soc. & Health Servs*, 133 Wn.2d 894, 930, 949 P.2d 1291 (1997). We have even gone so far as to characterize this right as "more precious . . . than the right of life itself." *In re Dependency of M.S.R.*, 174 Wn.2d 1, 13, 271 P.3d 234 (2012) (quoting *In re Gibson*, 4 Wn. App. 372, 379, 483 P.2d 131 (1971)). Given the recognized, great importance of a parent's due process rights, the possibility that some alleged biological parents may not be biological parents does not warrant depriving all alleged biological parents, many of whom will be determined to be biological parents, of their right to fundamental fairness. This interest is especially implicated when, as is here, the allegation of a parental relationship is not merely speculative. CP at 136.

Accordingly, alleged biological parents are owed "fundamental fairness" until their claim of parentage to the child is determined. An alleged biological parent's right to notice of a dependency action and to have an opportunity to establish parentage creates an injury in fact where the alleged biological parent's fundamental due process rights are curtailed or denied. Because dependency proceedings directly affect an alleged biological parent's fundamental right to have care, custody, and companionship of their child, alleged biological parents suffer an

injury in fact from dependency proceedings if they are categorically denied standing before determination of their alleged parentage claim.[11]

Excluding alleged biological parents from the proceedings before determination of their parentage claim categorically deprives a class of individuals from their constitutional due process interest in such proceedings. Therefore, we hold that JW has asserted an injury in fact because alleged biological parents have constitutional procedural protections in dependency proceedings until their alleged parentage claim is determined.

In summary, alleged biological parents have standing to participate in dependency proceedings because alleged biological parents are within the zone of interest sought to be protected by chapter 13.34 RCW and such parties would suffer an injury in fact by being categorically excluded from dependency proceedings until their alleged parentage claim is determined. With the standing elements met, we hold that alleged biological parents have standing to be given notice and an opportunity to appear, to assert their position, and to participate until their biological parentage claim is determined. However, their standing derives from their constitutional due process rights and not from status as a "parent" defined under chapter 13.34

---

[11] Notably, under the Uniform Parentage Act, alleged biological parents have standing in proceedings where a parent-child relationship is being adjudicated or determined. RCW 26.26A.405 (granting standing for "proceeding[s] to adjudicate parentage" to individuals including "[a]n individual whose parentage of the child is to be adjudicated"), RCW 26.26A.020 (describing the scope of the chapter as reaching any "adjudication or determination of parentage"), RCW 26.26A.010(8) (defining a "determination of parentage" as including "establishment of a parent-child relationship by a judicial proceeding"). Because an alleged biological parent may, upon being denied standing for dependency proceedings, nevertheless initiate a parentage proceeding under the Uniform Parentage Act, both the alleged biological parent's due process rights and the interest of judicial efficiency are thwarted by denying such individuals standing.

RCW. To be clear, we do not hold that alleged biological parents have the same rights as "parents" under chapter 13.34 RCW, and we do not delineate what rights alleged biological parents might have beyond the right to be given notice and an opportunity to appear, to assert their position, and to participate until their biological parentage claim is determined. Accordingly, we hold that the trial court erred in its finding 2.1.13.

## CONCLUSION

We reverse the moot ruling dismissing JW from this matter and remand for further proceedings.

Che, J.

We concur:

Veljacic, A.C.J.

Price, J.