# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Parental Rights to | No. 61638-6-II |
| B.B.R., | |
| | PUBLISHED OPINION |
| Minor child. | |

GLASGOW, J.—BR gave birth to BBR, who was born substance-affected, in May 2023. BR identified JR as BBR's father but did not complete birth paperwork before leaving BBR behind at the hospital. The Department of Children, Youth, and Families filed a dependency petition, and BBR began living with his sibling's adoptive family approximately one week after his birth. BBR has lived with them ever since, and the family would like to adopt him.

Several months after the dependency began, BR identified TH as BBR's father, and the Department added TH to the dependency petition. Unlike BR and JR, whose parental rights were later terminated by default, TH expressed ongoing interest in BBR and maintained intermittent contact with the Department. However, TH struggled with substance abuse, incarceration, and housing instability, and the Department often had difficulty reaching him.

In December 2023, the trial court ordered TH to establish parentage of BBR through genetic testing or an acknowledgment of parentage. Several months later, the trial court found BBR dependent as to TH and again ordered TH to cooperate with establishing parentage through genetic testing, among other required services. The Department tried to help TH comply, but TH did not complete genetic testing or other court-ordered services, and he only visited BBR five times in over one year. The Department did not move to enforce the order to establish parentage.

In September 2024, the Department filed a petition to terminate TH's parental rights under the Juvenile Court Act in Cases Relating to Dependency of a Child and the Termination of a Parent and Child Relationship, chapter 13.34 RCW. The termination trial occurred in February 2025. Midway through the termination trial, just after the Department rested, TH moved to dismiss the termination petition. He argued that parental rights cannot be terminated without first establishing parentage. The trial court orally denied TH's motion to dismiss. After the conclusion of trial, where TH was provided all of the procedural protections normally provided to parents, the trial court granted the Department's petition to terminate TH's parental rights.

On appeal, TH argues that the trial court erred when it denied his motion to dismiss and terminated his parental rights because alleged parents are not parents under the dependency and termination statutes. He contends that he did not have standing to participate in the termination proceedings as an alleged parent, and the trial court did not have statutory authority to terminate without first establishing parentage. TH assigns error to the findings and conclusions of law that characterize him as a parent, but he does not otherwise challenge the trial court's overall findings of fact. He also does not challenge the trial court's determinations that he was unfit and that it was in BBR's best interest to terminate his rights.

We conclude that TH's standing argument fails because we have already held in *In re Dependency of B.H.-W.*[1] that alleged parents have standing to participate in dependency proceedings, and the same reasoning applies equally to termination proceedings. The Department should have taken additional steps early in the dependency to try to enforce the requirement that TH establish parentage. Nevertheless, we also conclude that the trial court did not err when it

---

[1] 33 Wn. App. 2d 769, 772, 564 P.3d 1000 (2025).

proceeded with termination under the dependency and termination statutes, again applying the reasoning in *B.H.-W.* that under due process, an alleged parent must receive notice and opportunity to be heard. Because TH's own lack of diligence rendered the court unable to definitively establish parentage, and the trial court afforded him all the process he was due, the trial court did not err when it ordered termination. We affirm.

FACTS

I. BACKGROUND AND DEPENDENCY

BR gave birth to BBR, who was born substance-affected, in May 2023. JR accompanied BR to the hospital and, at that time, BR identified JR as BBR's father, but BR did not complete birth paperwork. BR and JR left BBR at the hospital and did not return.

The Department of Children, Youth, and Families placed BBR in protective custody and filed a dependency petition. When BBR left the hospital as a newborn, he began living with his maternal half-sibling's adoptive parents who are considered relative caregivers.

Several months later, BR told the Department that TH was BBR's biological father. The Department contacted TH to tell him he was BBR's alleged parent in August 2023, and the Department amended its dependency petition to include TH as a party in September 2023. TH expressed an interest in meeting BBR and maintained intermittent contact with the Department. However, TH struggled with substance abuse, incarceration, and housing instability, and the Department often had difficulty reaching him. TH had inconsistent access to a phone and missed several scheduled meetings.

BBR was found dependent as to BR, as well as JR and John Doe, who were two additional alleged fathers—by November 2023.

In December 2023, the trial court ordered TH to establish parentage through genetic testing or acknowledgment of parentage. TH told social workers he was unwilling to complete genetic testing because he was "already emotionally invested" in BBR and feared learning BBR was not his child. 1 Verbatim Rep. of Proc. (VRP) at 28. TH said he struggled to cope with negative paternity test results in the past. TH offered to sign an acknowledgment of parentage instead, but he did not follow through with establishing paternity by acknowledgment.

The trial court found BBR dependent as to TH in February 2024. The trial court entered a dispositional order requiring TH to cooperate with establishing parentage "through genetic testing." Ex. 5, at 8. The trial court also ordered TH to participate in various services, including substance abuse treatment, and advised him to contact the Department to begin visitation.

TH "continued to report being unwilling to complete a paternity test" throughout the dependency, "despite acknowledging this could delay reunification." Ex. 6, at 8. The Department offered to help TH complete paternity testing. The Department sent a genetic testing provider to the jail when TH was incarcerated. The Department also reiterated the importance of the testing, both at in-person meetings and in a series of letters. There is some evidence the Department told TH it would not accept an acknowledgment of parentage, in part because "paternity testing was the most appropriate course of action to take" in cases involving multiple alleged fathers. 1 VRP at 60. However, the trial court's December 2023 order allowed TH to establish parentage through an acknowledgment of parentage, and TH did not pursue this option or revisit this option with the court. The Department did not seek to enforce the trial court's order that he establish parentage.

TH visited BBR five times over the course of more than one year. During visits with TH, BBR acted confused, did not recognize TH, and did not want to interact with him. Since leaving

the hospital as a newborn, BBR has lived with the same relative caregivers and his half-sibling, and BBR sees them as parents. BBR's guardian ad litem believed the prospective adoptive placement with BBR's current caregivers and his half-sibling is in BBR's best interest.

## II. PARENTAL TERMINATION

In September 2024, without seeking to enforce the trial court's prior order that TH establish parentage, the Department filed a petition to terminate TH's parental rights under chapter 13.34 RCW, which allows juvenile courts to terminate the relationship between a parent and their dependent child under certain circumstances. By the end of 2024, the parental rights of BBR's mother and other alleged fathers had all been terminated by default.

In February 2025, the trial court proceeded with a termination trial against TH. Midway through the trial just after the Department rested, TH, who was represented by a court-appointed attorney, orally moved to dismiss the termination petition against him. TH argued that the Department failed to prove "an essential element of [the] termination case" because it had not established that he was BBR's parent. 1 VRP at 191. The Department argued that alleged parents' rights can be terminated under the dependency and termination statute, chapter 13.34 RCW. The trial court agreed, orally denied TH's motion to dismiss, and continued with the termination proceedings.

After the full termination trial where TH was represented by counsel, the trial court granted the Department's petition to terminate TH's parental rights. The trial court made findings of fact consistent with the facts stated above. TH does not challenge the substance of any of the findings of fact except to the extent that they characterize him as a parent, rather than an alleged parent.

5

Except as challenged, the found facts are verities on appeal. *State v. K.A.B.*, 14 Wn. App. 2d 677, 701, 475 P.3d 216 (2020).

Relevant to this appeal, the trial court found that TH was not willing to complete genetic paternity testing. It found that TH showed interest in completing an acknowledgment of parentage as an alternative to genetic testing; however, "no testimony was presented about whether that was possible, given the factual and legal circumstances of this case." Clerk's Papers (CP) at 180 (Finding of Fact (FF) 2.55)

The trial court also found that the Department had offered "[a]ll services necessary" to improve TH's parental deficiencies and TH failed to do so. *Id.* (FF 2.57). It found that TH was unfit to parent BBR and conditions were unlikely to improve.

Further, the trial court found that BBR's prospective adoptive parents "[did] not believe they [could] maintain a relationship" between BBR and TH due to TH's "sporadic contact" and "lack of bond" with BBR. CP at 181 (FF 2.67). The trial court found that BBR did not see TH as a father figure "and [was] rapidly developing and forming secure attachments with his caregivers." *Id.* (FF 2.61). The trial court found that terminating TH's parental rights was in BBR's best interests and delaying termination would make it more difficult for him "to integrate into a stable and permanent home." *Id.* (FF 2.66).

The trial court then adopted several conclusions of law, including that the Department had "established by clear, cogent, and convincing evidence that [TH was] currently unfit and [could not] care for [BBR]." CP at 182 (Conclusion of Law (CL) 3.2). It concluded that "[t]he Department [had] established by a preponderance of the evidence that termination of [TH's] parental rights [was] in the best interest of the child." *Id.* (CL 3.4). It also concluded that "[t]he parent-child

relationship" between TH and BBR "should be terminated pursuant to RCW 13.34.190." *Id.* (CL 3.5).

TH appeals. He does not challenge the trial court's factual findings, except to the extent they refer to him as a parent, nor does he challenge the court's conclusions of law. TH challenges only the trial court's denial of his motion to dismiss, arguing that he was a mere alleged parent and therefore his parental rights could not be terminated under the termination statutes, RCW 13.34.180 and .190.

## ANALYSIS

The best interest of the child is the paramount consideration in a parental termination proceeding. *In re Dependency of A.A.,* 105 Wn. App. 604, 610-11, 20 P.3d 492 (2001). "In termination proceedings, trial courts must resolve conflicts between the rights of parents and children in favor of the child's right to a permanent home and a speedy resolution." *In re Parental Rts. to E.D.*, 195 Wn. App. 673, 687, 381 P.3d 1230 (2016). The right to a speedy resolution helps ensure that "children do not remain in legal limbo—with the mental and emotional strain that entails—for any longer than is necessary. *In re Dependency of M.H.P.*, 184 Wn.2d 741, 762, 364 P.3d 94 (2015).

We review a trial court's "choice, interpretation, or application of a statute" de novo. *In re Marriage of Kinnan*, 131 Wn. App. 738, 751, 129 P.3d 807 (2006).

### I. STATUTORY BACKGROUND

A.     <u>Statutes Governing Establishment of Parentage</u>

The Uniform Parentage Act recognizes multiple ways to legally establish a parent-child relationship. RCW 26.26A.100. Relevant to this case, an alleged genetic father can establish a

parent-child relationship by signing an acknowledgment of parentage which must also be signed by the birth mother. RCW 26.26A.200. Genetic testing can also establish parentage and, under certain circumstances, courts can order a person to complete genetic testing for this purpose. RCW 26.26A.305.

B. Statutes Governing Termination of Parental Rights

1. Parental termination under chapter 13.34 RCW

While the legislature recognizes the importance of keeping the family unit intact, the dependency and termination statutes ensure that children are protected above all else when their "right to conditions of basic nurture, health, or safety is jeopardized." RCW 13.34.020. Accordingly, "the dependency and termination statutes allow the State to intervene to protect a child from harm." *In re Dependency of I.J.S.*, 128 Wn. App. 108, 120, 114 P.3d 1215 (2005). Dependency temporarily disrupts a parent-child relationship in service of that goal, while termination permanently terminates parental rights. *In re Dependency of F.S.*, 81 Wn. App. 264, 268, 913 P.2d 844 (1996).

Any party to a dependency can petition for the "termination of [the] parent and child relationship" after a court has declared a child dependent, a dispositional order has been entered, and the child has been out of their parent's custody for at least six months, among other conditions. RCW 13.34.180(1)(a)-(c). The "biological or adoptive parents of a child" and those who have established a parent-child relationship in one of the ways established under RCW 26.26A.100 are considered "parents" under the dependency and termination statutes. RCW 13.34.030(20). This

court has held that alleged parents are not considered parents under this definition. *B.H.-W.*, 33 Wn. App. 2d at 779.[2]

The dependency and termination statutes aim to cure parental deficiencies and require courts to find that certain services have been offered to advance that goal. RCW 13.34.180(1)(d). Trial courts in a parental termination proceeding must find, among other required conditions, that "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided." *Id.* It must find that "there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future." RCW 13.34.180(1)(e). It must also find that "continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home." RCW 13.34.180(1)(f). Generally, these findings must be made by clear, cogent, and convincing evidence. RCW 13.34.190(1)(a)(i). As a matter of due process, the court must find that the parent is currently unfit to parent by clear, cogent, and convincing evidence. *In re Parental Rts. to B.P.*, 186 Wn.2d 292, 312-13, 376 P.3d 350 (2016). Finally, the court must also find that termination of parental rights is in the child's best interest by a preponderance of the evidence. *In re Dependency of J.D.P.*, 17 Wn. App. 2d 744, 755, 487 P.3d 960 (2021); *see also* RCW 13.34.190(1)(b).

Courts must also provide basic procedural protections in termination proceedings, including notice, a fact-finding hearing before a judge, and an attorney at no cost to the parent.

---

[2] When *B.H.-W.* was decided, the definition of "parent" was codified at RCW 13.34.030(19), but the definition of "parent" remains the same. *See* LAWS OF 2024, ch. 328, § 101.

RCW 13.34.180(6). In addition, the parent has the right to introduce evidence and the right to examine witnesses, among other protections. *Id.*

The child dependency and termination statutes mention alleged parents in only one section, RCW 13.34.125, a section related to voluntary adoptions plans. In that context, the legislature provided that an alleged father's, birth parent's, or parent's wishes must be followed if that person has agreed to termination of their parental rights and their proposed adoptive placement is properly qualified and in the best interest of the child. RCW 13.34.125 also acknowledges that "if the [D]epartment has filed a termination petition, an alleged father's, birth parent's, or parent's preferences regarding the proposed adoptive placement of the child shall be given consideration."

2.      Termination of an alleged parent's rights under chapter 26.33 RCW

The adoption statute, chapter 26.33 RCW, also provides an avenue for the termination of parental rights in certain circumstances. RCW 26.33.100-.130. The Department is among the parties who may bring a termination petition under the adoption statute. RCW 26.33.100(1)(a). Like the requirements under the dependency and termination statutes, courts must provide certain procedural protections, including notice, a hearing, and counsel at public expense. RCW 26.33.110(1), (2), (3)(b).

In contrast to the dependency and termination statutes, the adoption statute does not require the Department to offer the parent any services. RCW 26.33.120. Additionally, while the dependency and termination statutes do not focus on alleged parents, the adoption statute expressly allows the termination of an alleged parent's rights. *Id.*

Under the adoption statute, an alleged parent's rights can be terminated if the alleged parent "has failed to perform parental duties under circumstances showing a substantial lack of regard for

[their] parental obligations," and the alleged parent "is withholding consent to adoption contrary to the best interest of the child." RCW 26.33.120(2)(a). The petitioner must make "a showing by clear, cogent, and convincing evidence that it is in the best interest of the child to terminate the relationship." RCW 26.33.120(2). While the parental termination statute requires a showing that termination is in the best interest of the child by a preponderance of the evidence, the adoption statute uses a higher, "clear, cogent, and convincing evidence" standard for the best interest determination. RCW 26.33.120(1)-(2); 13.34.190(1)(b); *J.D.P.*, 17 Wn. App. 2d at 754-55.

## II. JUSTICIABILITY AND STANDING

TH argues that the trial court erred by terminating his "hypothetical parental rights" under chapter 13.34 RCW because the statutory definition of "parent" in that statute does not include alleged parents. Br. in Supp. of Mot. for Accelerated Rev. (Br. of Appellant) at 1.[3] Because legal paternity of BBR was never established in this case, TH contends that this deprived him of standing to participate in the termination proceedings, and the trial court improperly terminated his parental rights in these circumstances. We disagree.

As an initial matter, TH calls this issue a "glaring justiciability problem." Br. of Appellant at 5. His argument relies on justiciability standards derived from the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, which governs requests for declaratory relief. RCW 7.24.010. UDJA justiciability incorporates principles of standing, ripeness, and mootness, as well as the case and controversy requirement. *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 411, 27

---

[3] This appeal originated as a motion for accelerated review, which the court commissioner referred to a panel of judges for additional authoritative guidance and consideration on an accelerated basis. Ruling Referring Termination Appeal to Panel on Accelerated Basis (Sep. 5, 2025) at 3. The brief in support of that motion is treated as the appellant's opening brief.

P.3d 1149 (2001). But this case does not involve an action under the UDJA, so the specific justiciability standards Washington courts have required for an action under the UDJA do not apply here.

However, to the extent that TH relies on standing, TH is correct that a litigant asserting a particular right or interest in a legal proceeding must have a direct interest in its outcome.[4] His standing argument is best addressed by deciding whether an alleged parent more generally has common law standing to participate in parental termination proceedings. *See B.H.-W.*, 33 Wn. App. 2d at 778.

Regardless of whether the issue of standing was adequately preserved below, we can address it at any time. *In re Recall of West*, 156 Wn.2d 244, 248, 126 P.3d 798 (2006). Standing refers to a party's ability to "raise an issue regarding a legally protected right." *B.H.-W.*, 33 Wn. App. 2d at 777. "We analyze a question of standing by applying a two part test: '(1) whether the interest sought to be protected is arguably within the zone of interests to be protected or regulated

---

[4] Because TH was the *respondent* to a petition to terminate his parental rights, and the Department has not challenged his ability to assert any right or interest in the termination proceedings, we recognize this argument may not really be one of standing. The trial court did not deprive TH of any protections under the termination statutes, and TH's argument does not assert entitlement to any protections not afforded to him. As a result, TH may have misidentified the proper argument.

TH's argument seems to be more about a question of the proper scope of the parental termination statutes and whether the trial court had statutory authority to proceed with parental termination under the dependency and termination statute, an issue addressed below. Put this way, the argument is less about standing and more about statutory interpretation and whether the legislature intended chapter 13.34 RCW to operate against alleged parents.

This court properly addressed a substantively similar question as one of standing in *B.H.-W.*, 33 Wn. App. 2d at 778-79. There, the standing argument made more sense because the trial court had deprived an alleged parent of participation in a dependency and the alleged parent was arguing *for* standing to participate. Nevertheless, because TH argues about standing, we too discuss standing and explain why the standing doctrine was not a barrier to the termination of TH's under RCW 13.34.

by the statute or constitutional guarantee in question and (2) whether the petitioners have asserted injury in fact.'" *Id.* at 779 (internal quotation marks omitted) (quoting *Wash. Bankers Ass'n v. State*, 198 Wn.2d 418, 455, 495 P.3d 808 (2021)).

Though alleged parents are "not particularly named in the [dependency] statute," the *B.H.-W.* court held that alleged parents have common law standing in dependency actions under the same chapter because they *may* be biological parents. *Id.* The interests implicated fall within the "zone of interests" protected by the dependency statutes and constitutional due process. *Id.* The *B.H.-W.* court explained that an alleged parent's "interest in being part of the family unit directly aligns with the legislature's expressed interest in protecting and supporting the same unit." *Id.* at 781; *see also* RCW 13.34.020. Allowing an alleged parent to participate in dependency proceedings at their outset prevents delays while parentage is established, furthering the legislature's interest in protecting the child's right to a speedy resolution. *B.H.-W.*, 33 Wn. App. 2d at 781; RCW 13.34.020. Allowing an alleged parent to participate also satisfies due process concerns by ensuring that potential parents receive notice and an opportunity to be heard. *B.H.-W.*, 33 Wn. App. 2d at 781. Further, alleged parents "would suffer an injury in fact" if excluded from dependency proceedings, which may erroneously deprive them of a constitutionally protected interest in their child that exists "even when parentage is not yet established." *Id.* at 782, 784. Accordingly, "alleged biological parents have standing to be given notice and an opportunity to appear, to assert their position, and to participate until their biological parentage claim is determined." *Id.* at 772.

While the *B.H.-W.* court held that alleged parents have standing to participate in the dependency process, it declined to "delineate what rights alleged biological parents might have" in a dependency proceeding beyond the right to notice and opportunity to be heard. *Id.* at 784.

*B.H.-W.* dealt specifically with dependency proceedings, which have a different purpose than termination proceedings: while "a determination of dependency does not sever all contacts between a parent and child," termination is permanent. *In re Marriage of Wehr*, 165 Wn. App. 610, 614, 267 P.3d 1045 (2011). The *B.H.-W.* court's concerns about preserving an alleged parent's due process rights in a dependency action apply with even greater force to termination proceedings, which determine whether the parent-child relationship should be permanently severed. *B.H.-W.*, 33 Wn. App. 2d at 781; *Wehr*, 165 Wn. App. at 614. Given the legislature's statement that "the family unit should remain intact," with limited exceptions, an alleged parent's ability to participate in termination proceedings falls squarely in the zone of interest the statute was intended to protect. RCW 13.34.020. Categorically, depriving alleged parents of the procedural protections of termination proceedings risks depriving them of a fundamental right to parent. *See In re Parentage of R.V.*, 22 Wn. App. 2d 300, 317, 511 P.3d 148 (2022).

To the extent TH argues that the trial court simply erred by allowing the termination to proceed *before* establishing TH's parentage, that argument implicates ripeness. Ripeness is often intertwined with standing because it coincides with the injury-in-fact inquiry. *Bishop Paiute Tribe v. Inyo County,* 863 F.3d 1144, 1153 (9th Cir. 2017). For a case to be ripe, it must present definite and concrete issues, rather than hypothetical or abstract ones. *Id.* Moreover, we can take into account prudential considerations, like the fitness of the issue for judicial consideration and the

hardship to the parties of withholding judicial consideration. *Thun v. City of Bonney Lake*, 3 Wn. App. 2d 453, 460-61, 416 P.3d 743 (2018).

Here, we conclude that alleged parents meet the injury-in-fact requirement of both standing and ripeness because depriving them of the procedural protections of termination proceedings risks depriving them of their fundamental right to parent. Additionally, under the unique circumstances of this case, prudential considerations weigh in favor of a finding of ripeness. Nothing hindered the trial court's ability to hold a full termination trial, which afforded TH all the procedural protections a parent would receive. TH refused to take steps to establish parentage in the face of the dependency court's clear orders to do so. The Department often emphasized the importance of participating in genetic paternity testing and made efforts to help TH complete it. The Department sent a genetic testing provider to the jail where TH was incarcerated. TH had at least 12 months to establish parentage and failed to take advantage of multiple offers to assist him in obtaining genetic testing.[5]

In the meantime, TH did not make progress in becoming a suitable parent for BBR. He did not improve his parental deficiencies or meaningfully participate in any of the court-ordered services that the Department offered, including substance abuse treatment, mental health treatment, and parenting classes. He visited with BBR only five times between August 2023 and February 2025 and failed to develop a bond with him. Instead, BBR bonded with the caregivers

---

[5] The Department could have taken steps to have TH's parentage of BBR clarified during the lengthy period when TH was subject to the dependency and under a court order to participate in establishing parentage. The Department could have moved to enforce the trial court's order, and it could have taken this approach early in the dependency so as to promote the child's right to a speedy resolution and permanency.

he has lived with since he was a newborn, and they were ready to proceed with adoption. TH's delays in establishing parentage should not hinder BBR's significant interest in achieving permanency. *E.D.*, 195 Wn. App. at 687. These prudential considerations weigh heavily in favor of concluding that standing and ripeness were not barriers to the trial court proceeding with termination under the parental termination statutes under these circumstances.

### III. STATUTORY AUTHORITY TO TERMINATE UNDER CHAPTER 13.34 RCW

TH also argues that the trial court lacked authority to proceed with termination under the parental termination statute until TH met the definition of "parent" in RCW 13.34.030(20). Br. of Appellant at 1, 9 n.4. TH relies on the definition of "parent" in the statute, as well as the *B.H.-W.* court's holding that the plain language of the definition does not include alleged parents. *See* RCW 13.34.030(20); Br. of Appellant at 8-9; *B.H.-W.*, 33 Wn. App. 2d at 778. TH's argument asks us to determine whether the parental termination statute allows a termination action to proceed when parentage remains undetermined despite court orders to resolve parentage and where the termination statutes do not expressly apply to alleged parents.

In *B.H.-W.*, we recognized that alleged parents have a "'cognizable and substantial interest in [their alleged] child.'" 33 Wn. App. 2d at 782 (quoting *In re Adoption of Baby Boy C.*, 31 Wn. App. 639, 644, 644 P.2d 150 (1982)). The *B.H.-W.* court explained that the fundamental, constitutional nature of parental rights requires an exercise of fundamental fairness before interfering with those rights, even where the parental relationship is still only alleged. *Id.* Because alleged parents' interests arise from due process, rather than the dependency and termination statutes, the statute's silence on alleged parents did not prevent them from participating in

dependency proceedings. *Id.* The court declined to precisely define the rights that alleged parents had in a dependency prior to determination of parentage. *Id.* at 773.

Applying this reasoning here, the trial court simply continued to provide TH with the constitutionally required notice and opportunity to appear, the ability to assert his own version of the facts, and the ability to participate in proceedings when it came time for the trial court to address the Department's termination petition. *Id.* at 772. As in *B.H.-W.*, TH's interest in these procedural protections arise from due process, so the dependency and termination statutes' limitations on the definition of parent should not be a barrier to TH's participation in termination proceedings where his parentage of BBR had not yet been established, despite the best efforts of the Department and the dependency court. *Id.* at 783-84. Allowing TH to participate in termination proceedings relating to his potential parental rights was a natural extension of our due process reasoning in *B.H.-W.*

To the extent TH argues that the trial court should have honored the limitations of the dependency and termination statutes by waiting to initiate termination until after parentage was established, despite TH's own persistent refusal to cooperate, we decline to adopt this approach. We cannot ignore that TH's ongoing status as an alleged parent is a result of his lack of diligence and complete failure to follow the dependency court's orders to resolve his parentage through genetic testing or an acknowledgment of parentage. Although the context was different, this court has declined to require delay in termination proceedings where a parent's "lack of diligence" caused continued failure to establish evidence of a guardianship option. *In re Welfare of N.M.*, 184 Wn. App. 665, 675, 346 P.3d 762 (2014). Parents have a due process right to present evidence of valid guardianship as part of a parental termination proceeding, but that right "is not absolute." *Id.*

The *N.M.* court's reliance, in part, on lack of diligence in the context of a parent's due process rights in a termination proceeding is helpful. *Id.* TH demonstrated a similar lack of diligence with regard to establishing parentage. He learned he was an alleged father to BBR more than a year before the Department filed a petition to terminate his parental rights. TH had ample opportunity to provide evidence proving or disproving parentage, which is something only he had the power to do. TH argues that the Department refused to accept an acknowledgment of parentage, but there is no evidence that he made any attempt to pursue that option and present an acknowledgment to the court. TH also argues that the Department should have moved for the dependency court to enforce its dispositional order requiring him to submit to genetic testing by holding him in contempt, or the court should have taken steps to seek termination under the adoption statute. We acknowledge that it would be far more consistent with a child's right to permanency and speedy resolution of these cases for the Department to have taken more concrete steps early in the dependency to enforce the trial court's order requiring that TH establish his parentage. However, TH has not pointed to any authority that *requires* the trial court to exercise TH's suggested options or makes these options exclusive.

Despite TH's lack of diligence, the trial court did not risk erroneously depriving him of any rights he may have had as a parent. Rather, it afforded TH *all* the due process rights of an individual whose parentage was definitively established, extending TH protections beyond what we contemplated in *B.H.-W.* when addressing the contours of alleged parents' rights under the dependency and termination statutes. The trial court preserved TH's rights to the greatest extent possible while also moving forward with establishing permanency for BBR, a significant legislative goal underpinning the dependency and termination statutes. *E.D.*, 195 Wn. App. at 687.

No. 61638-6-II

The alternative, allowing alleged parents to preserve their potential parental rights by avoiding termination indefinitely, could leave children in the sort of "legal limbo" that the legislature aims to avoid. *M.H.P.*, 184 Wn.2d at 762. Therefore, we conclude that the trial court did not err when it afforded TH all the procedural and substantive rights afforded to parents in a termination proceeding.

To be clear, like in *B.H.-W.*, we are *not* concluding that the full panoply of procedural and substantive protections under the dependency and termination statutes must be provided to alleged parents upon termination. But the trial court did not err in this case when it provided TH with all of those protections available under the statute.

CONCLUSION

We affirm.

_____
GLASGOW, J.

We concur:

_____
LEE, P.J.

_____
CHE, J.

19